IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JIN MIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:25-CV-01668 |
| | ) | |
| LIFE TIME FITNESS, INC., | ) | Judge Robert Gettleman |
| a Minnesota Corporation, | ) | |
| | ) | Magistrate Judge Daniel McLaughlin |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Life Time, Inc. (f/k/a Life Time Fitness, Inc.) (hereafter, "LTF" or "Defendant"), by and through its attorneys Litchfield Cavo LLP, and pursuant to Rule 56 of the Federal Rules Of Civil Procedure, moves for Summary Judgment on Plaintiff's Complaint at Law, and on its Counterclaim, in its favor and against Plaintiff, and for LTF's *Memorandum in Support of Motion For Summary Judgment*, states as follows:

### I. FACTS

On December 2, 2021, Plaintiff, Jin Min ("Plaintiff"), became a member of the Life Time Fitness facility located at 1220 Lakeview Drive, Romeoville, Illinois (the "Club"). Plaintiff did so when she signed a Member Usage Agreement and other agreements to activate her membership. Statement of Facts ("SOF") ¶ 1, Exhibit A thereto. The Member Usage Agreement signed by Plaintiff contained an exculpatory clause. *Id.* at § 2 and § 3.

On February 18, 2025, Plaintiff filed a negligence Complaint against LTF in United States District Court for the Northern District of Illinois. SOF ¶ 2, Exhibit B thereto. Plaintiff alleges that on March 26, 2023, she injured herself when she tripped on blow dryer electrical cords hanging from the vanity county in the women's locker room of the Club. SOF at ¶ 3; ECF No. 1 at ¶ 11.

There is no genuine dispute of material fact that the exculpatory clause applies and bars Plaintiff's negligence claims. As a consequence, LTF is entitled to summary judgement.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure, Rule 56 provides that a party against whom a claim is asserted may, at any time; move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof. Fed. R. Civ. Pro. R. 56 (b).

The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelly & Sons Co.,* 42 F. 3d 439, 443 (7th Cir 1994). It is well-settled law that the party opposing summary judgment who bears the burden of proof on a dispositive issue must offer specific evidence demonstrating a factual basis on which it is entitled to relief. *Anderson v. Liberty Lobby,* 477 U.S. 242, 256 (1986). The party may not rely on conclusory allegations or speculation alone to oppose summary judgment. *Id.*

While a federal court sitting in diversity jurisdiction shall apply its own procedural laws, it must apply the substantive laws of the state in which it sits. *First Nat. Bank and Trust Corp. v. Am. Eurocopter Corp.,* 378 F.3d 682 (7th Cir 2004). In the instant case, the substantive laws of Illinois apply.

## III. ARGUMENT

**A.** **Plaintiff's Claims are Barred by the Exculpatory Clauses Contained in the Member Usage Agreement.**

LTF's Member Usage Agreement cautions members as follows:

**PLEASE READ THIS AGREEMENT CAREFULLY AS IT AFFECTS YOUR LEGAL RIGHTS. THIS AGREEMENT CONTAINS AN ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND A BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER**.

SOF ¶ 1, Exhibit A (emphasis in original).

The Member Usage Agreement signed by Plaintiff provides, in pertinent part, under a bold heading titled,

> **ASSUMPTION OF RISK.** I understand that there are **dangers, hazards, and risks of injury or damage, some of which are inherent, in the use of Life Time's premises**, **facilities equipment, services, activities or products**…."

*Id.* at § 2 (emphasis in original).

The Member Usage Agreement defines the "Risks" to include, but not be limited to: "(1) slips, trips, collisions, falls, and loss of footing or balance…" *Id.* "Injuries" are defined to include, but not be limited to: "(2)… torn or damaged muscles or ligaments, broken bones, allergic reactions, burns, sprains, bruises and scrapes; and (4) pain and suffering…" *Id.* The Assumption of Risk Section of the Member Usage Agreement explicitly states, "**I FULLY UNDERSTAND, AND VOLUNTARILY AND WILLINGLY ASSUME THE RISKS OF INJURY**." *Id.* at § 2.

The Member Usage Agreement's also provides, in pertinent part:

> **WAIVER OF LIABILITY.** … I hereby voluntarily and forever **release and discharge Life Time from**, covenant and **agree not to sue Life Time for**, and **waive, any claims**… **which arise out of, result from, or are caused by any NEGLIGENCE OF LIFE TIME**….

*Id.* at § 3 (emphasis in original).

The Member Usage Agreement continues that such claims include, but are not limited to: "(1) negligent design, construction (including renovation or alteration), repair, maintenance, operation, supervision, monitoring, or provision of Life Time Premises and Services; (2) negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition; and (3) negligent failure to provide or keep premises in a reasonably safe condition…" *Id.* at § 3a.

At the end of the Member Usage Agreement above the area where Plaintiff signed it states:

> **I HAVE READ, UNDERSTOOD, RECEIVED A COPY OF, AND AGREE TO ALL TERMS AND CONDITIONS OF THIS MUA, INCLUDING**

**SPECIFICALLY THE ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER UNDER WHICH I AM RELINQUISHING LEGAL RIGHTS.**

*Id.* at p. 4 (emphasis in original).

As the Court knows, Illinois law favors the freedom of individuals to enter into mutually binding contracts, including those with exculpatory provisions. *Harris v. Walker*, 519 N.E.2d 917, 919 (Ill. 1988). Under Illinois law, an exculpatory agreement must be upheld unless: 1) it violates settled public policy or the parties have a special or substantially disparate bargaining relationship that precludes enforcement; or 2) the type of injury the plaintiff allegedly sustained was not reasonably foreseeable or contemplated (i.e., it is not within the scope of possible risks or dangers set forth in its terms). *Garrison v. Combined Fitness Ctr., Ltd.*, 559 N.E.2d 187, 189-90 (1st Dist. 1990); see also *Owen v. Vic Tanny's Enters.,* 199 N.E.2d 280, 282 (1st Dist. 1964); *Kubisen v. Chicago Health Clubs*, 388 N.E.2d 44, 46-47 (1st Dist. 1979). Both standards are clearly met on the undisputed facts here.

    **i.    LTF's Exculpatory Clause Does Not Violate Illinois Public Policy, Nor Are the Parties in a Special or Heavily Disparate Bargaining Relationship.**

The sufficiency of facts necessary to constitute waiver of a contractual provision is a question of law. *Geier v. Hamer Enters., Inc.*, 226 Ill. App. 3d 372, 390 (1st Dist. 1992). Illinois courts long ago settled that exculpatory clauses used by health and fitness centers to relieve themselves from liability claims for personal injuries allegedly sustained by members do not violate Illinois public policy. *See*, *e.g.*, *Owen*, 199 N.E.2d at 282; *Bers v. Chicago Health Clubs, Inc.*, 297 N.E.2d 360 (1st Dist. 1973); *Kubisen*, 388 N.E.2d at 46-47; *Garrison*, 559 N.E.2d 187 at 190-91; *see also Maness v. Santa Fe Park Enters., Inc.*, 700 N.E.2d 194, 198-99 (1st Dist. 1998) (enforcing exculpatory clause signed by a participant in car race); *Platt v. Gateway Int'l Motor Sports Corp.*, 813 N.E.2d 279, 285 (5th Dist. 2004) (enforcing exculpatory clause signed by

4

participant in car race found enforceable against widow). In *Keevil v. Life Time Fitness, Inc.*, 2016 IL App (1st) 151551-U at ¶ 52, the court found that the exculpatory clause specifically at issue here was enforceable. See also *Titschler v. LTF Club Operations Co., Inc.*, No. 15-CV-0664, 2016 WL 1613545, at *4 (N.D. Ill. Apr. 22, 2016) (granting summary judgment to Defendant LTF on basis that the exculpatory clause bars the plaintiff's claim). In Illinois, there is no legislative directive against the use of such clauses by health and fitness clubs. *Owen*, 199 N.E.2d at 281.

Moreover, there is no special relationship between a health club and its members (such as an employment relationship) that would preclude enforcement of an exculpatory clause. *Garrison*, 559 N.E.2d at 190. Nor is there substantial or great disparity of bargaining power between the parties, because health clubs are neither scarce nor do they provide services that are essential or public necessities. *Owen*, 199 N.E.2d at 282; *Kubisen*, 388 N.E.2d at 46-47.

In this case, there is no basis to find that the exculpatory clause in the agreement indisputably signed by Plaintiff is contrary to public policy. Based on the contract, the relationship between Plaintiff and LTF was that of a typical fitness club membership.

### ii. The Type of Injury Plaintiff Allegedly Sustained Was Reasonably Foreseeable and Well Within the Scope of Possible Risks or Dangers Set Forth in the Exculpatory Clauses.

Because Illinois public policy permits enforcement of LTF's exculpatory clauses, the sole question before the Court with respect to Plaintiff's claims is whether the risk or danger of the injury allegedly sustained by her was reasonably foreseeable or contemplated (i.e., was within the scope of possible risks or dangers set forth in the exculpatory clauses). To meet this standard, a defendant need not establish that the parties contemplated the precise injury in the precise manner as set forth in the plaintiff's complaint, nor must the type of negligent acts for which the plaintiff expressly agrees to excuse the defendant be seen with absolute clarity. *Garrison*, 559 N.E.2d at

5

190; *Masciola v. Chi. Metro. Ski Counsel*, 628 N.E.2d 1067, 1071 (1st Dist. 1993); *Owen*, 199 N.E.2d at 281-82. Rather, the injuries need only arise out of an activity normally associated with the use of the facilities, equipment, services or programs in question: "It should only appear that the [plaintiff's] injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff." *Garrison*, 559 N.E.2d at 190; *See also Anast v. LTF Club Operations Co., Inc. et al*, 1:16CV08763 at Doc. #46 (granting summary judgment for Defendant LTF on exculpatory clause at issue here on plaintiff's slip and fall claim); *Titschler v. LTF Club Operations Co., Inc.*, No. 15-CV-0664, 2016 WL 1613545, at *4 (N.D. Ill. Apr. 22, 2016) (granting summary judgment to Defendant LTF on basis that the exculpatory clause bars the plaintiff's claim).

In this case, Plaintiff agreed to an exculpatory clause that clearly and unambiguously releases her claims in this case. Specifically, by signing the Member Usage Agreement, Plaintiff acknowledged, in provisions boldly titled "**ASSUMPTION OF RISK**" and **"WAIVER OF LIABILITY,"** that she "…[understood] that there are dangers, hazards, and risks of injury or damage, some of which are inherent, in the **use of Life Time's premises, facilities, equipment, services, activities or products**…" which specifically included "(2)… torn or damaged muscles or ligaments, broken bones, allergic reactions, burns, sprains, bruises and scrapes; and (4) pain and suffering…"

Plaintiff asserts she injured herself when she tripped on blow dryer electrical cords hanging from the vanity county in the women's locker room of the Club. SOF ¶ 3. Plaintiff's Complaint alleges that LTF was negligent in respect to the maintenance, inspection, design, and warnings related to the Club's women's locker room, specifically concerning the placement and securing of blow dryer electrical cords under the vanity counter. These allegations fall squarely within the

6

provisions of the exculpatory clause which further specifies that "(1) negligent design, construction (including renovation or alteration), repair, maintenance, operation, supervision, monitoring, or provision of Life Time Premises and Services; (2) negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition; and (3) negligent failure to provide or keep premises in a reasonably safe condition…" are encompassed in the "Negligence Claims" Plaintiff agreed to release. Therefore, Plaintiff's alleged injuries were within the scope of the reasonably foreseeable released claims.

Moreover, exculpatory provisions have been upheld by the Illinois Appellate Court in *Neumann v. Gloria Marshall Figure Salon*, 388 N.E.2d 44 (2nd Dist. 1986), *Owen v. Vic Tanny's Enters.*, 199 N.E.2d at 280, and *Kubisen v. Chi. Health Clubs*, 388 N.E.2d at 44. In *Neumann*, for instance, the plaintiff sustained back injuries while using an exercise machine that a club employee allegedly negligently set up for her. When joining the club, the plaintiff had read and signed a membership agreement with the following provision: "Patron specifically assumes all risks of injury while using any equipment or facilities at the salon and waives any and all claims against Gloria Marshall Management Company and the owners and employees of the salon for any such injury." 388 N.E.2d at 1012; accord *Kubisen*, 388 N.E.2d at 45 (waiver of liability for injuries while "using the facilities and the equipment" in the fitness center). The appellate court affirmed the trial court's enforcement of the exculpatory clause on grounds that "plaintiff could reasonably contemplate that she assumed the risk of injury resulting from machines provided by defendant." *Neumann*, 500 N.E.2d at 1013. "When an exculpatory clause specifically sets forth in clear language the range of activities to which it applies, the clause is enforceable." *Id.*

In *Owen*, the court reached the same result. After slipping and falling on a stone floor in a shower room adjacent to the swimming pool, the plaintiff sued the defendant, a gymnastics facility,

7

on grounds that the club management negligently allowed a dangerous or defective condition to exist even after an employee had reported it. 199 N.E.2d at 281. The plaintiff there had signed a membership agreement with the following provision:

> Member assumes full responsibility for any injuries or damages which may occur to Member in, on or about the premises of said gymnasiums and he does hereby fully and forever release and discharge Tanny . . . from any and all claims *** resulting from or arising out of the Member's use or intended use of the said gymnasium or the facilities and equipment thereof.

*Id.* The appellate court reversed a verdict for the plaintiff, enforcing the exculpatory clause on grounds the incident in the shower room was within the provisions of the clause. The court specifically rejected the plaintiff's contention that the clause could only pertain to injuries in areas without defects or dangerous conditions. *Id*.

Like the language in *Neumann* and *Owen*, the exculpatory provisions to which Plaintiff agreed in this case clearly and unambiguously pertain to the alleged injuries Plaintiff claims as a result of her use of LTF's facilities. By executing these provisions, Plaintiff contractually waived and released the very claims alleged in her Complaint at Law against LTF. If Plaintiff's run-of-the-mill trip and fall claims are not covered by the exculpatory clause, then it is hard to imagine what claim is covered. Accordingly, summary judgment is appropriate in LTF's favor on all claims asserted by Plaintiff in her Complaint at Law. See *Swierkosz v. Starved Rock Stables*, 239 Ill. App. 3d 1017, 1022 (1993) (affirming dismissal of negligence claim on basis that the plaintiff's execution of the exculpatory agreement bars her recovery of damages under a negligence theory).

**B.     Plaintiff's Lawsuit Breaches the Membership Usage Agreement, Warranting Summary Judgment for LTF on its Counterclaim.**

As set forth in Section A of this Memorandum, Plaintiff expressly agreed in the Member Usage Agreement not to bring negligence claims against LTF, including claims based on alleged dangerous conditions or negligent acts occurring in the locker rooms, as a condition of her

membership. By filing the instant suit and asserting precisely such a claim, Plaintiff has breached the terms of that agreement.

LTF fully and completely performed its obligations under the Member Usage Agreement by providing Plaintiff with Access to the Club and its facilities. In exchange, Plaintiff agreed to abide by the terms of the Member Usage Agreement, including the waiver of liability and covenant not to sue. Plaintiff's decision to disregard those obligations and file suit constitutes a clear breach.

Under Illinois law, a party may contractually assume responsibility for litigation costs of an opposing party. See *Johnson v. Human Rights Comm'n*, 173 Ill. App. 3d 564, 569 (1st Dist. 1988) (parties may be required to pay the opposing side's fees and costs where expressly provided for by statutory and/or contractual provisions).

Pertinently, Plaintiff agreed in the Member Usage Agreement as follows:

> **Life Time's Fees and Costs.** I specifically agree that, if I…assert a Negligence Claim against Life Time and/or breach my agreement not to sue Life Time, **I will pay all reasonable fees (including attorneys' fees), costs and expenses incurred by Life Time ("Life Time's Fees and Costs") to defend (1) the Negligence Claim(s)** and (2) all other Claims based on the same facts as the Negligence Claims(s).

SOF ¶ 1, Ex. A at § 3b, *emphasis in original*.

As a result of the instant breach, LTF has incurred damages, including attorneys' fees and litigation costs associated with defending this action – fees and costs that Plaintiff is contractually obligated to bear. Accordingly, LTF is entitled to summary judgment on its breach of contract counterclaim, including an award of its fees and costs.

## IV. CONCLUSION

Plaintiff signed a Member Usage Agreement that contained an exculpatory clause that bars her negligence claims. Her claims are of exactly the sort contemplated by the Membership Usage Agreement signed by Plaintiff. Therefore, Defendant LTF is entitled to summary judgment on

9

Plaintiff's Complaint at Law in its entirety, as well as on LTF's Counterclaim.

WHEREFORE, Defendant, Life Time, Inc. (f/k/a Life Time Fitness, Inc.), respectfully requests that this Court grant its *Motion for Summary Judgment* and enter judgment in its favor and against the Plaintiff as to her Complaint at Law, and its Counterclaim.

Respectfully submitted,
**Life Time, Inc. (f/k/a Life Time Fitness, Inc.)**

*/s/ Michael L. Hahn*
Michael L. Hahn

Michael L. Hahn
Zachary G. Stillman
**Litchfield Cavo LLP**
303 W. Madison Street, Suite 300
Chicago, IL 60606
312-781-6569 (Hahn)
312-781-6672 (Stillman)
Fax: 312-781-6630
Hahn@LitchfieldCavo.com
Stillman@LitchfieldCavo.com