# Exhibit D

*Jin Min v. Life Time Fitness, Inc.*
25-CV-01668
Exhibits to Defendant's Statement of Material Facts In Support of its Motion for Summary Judgement

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JIN MIN,

  Plaintiff,

v.          Cause No. 25-cv-01668

LIFE TIME FITNESS, INC., a Minnesota Corporation,

  Defendant.

### DEFENDANT LIFE TIME, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO PLAINTIFF'S COMPLAINT AT LAW

NOW COMES, Defendant, Life Time, Inc., ("Life Time") incorrectly designated under its former name, Life Time Fitness, Inc., by and through their attorneys, LITCHFIELD CAVO LLP, and for its Answer and Counterclaim to Plaintiff Complaint, hereby states as follows:

### ANSWER

1. Plaintiff JIN MIN (hereinafter "JIN") is a citizen of the United States of America and resident of the State of Illinois.

**ANSWER: Life Time lacks information sufficient to admit or deny the allegations set forth in this paragraph.**

2. Defendant LIFE TIME FITNESS, INC. (hereinafter "LIFETIME") is a Minnesota corporation with its principal place of business in the State of Minnesota and is therefore a citizen of the State of Minnesota.

**ANSWER: Life Time admits that it was formerly known as "Life Time Fitness, Inc." and the balance of the allegations set forth in this paragraph.**

3. Defendant LIFETIME was a Minnesota Corporation which does and did business in its own capacity and/or through health club and spa affiliates in the State of Illinois.

**ANSWER: Life Time admits that it does business in Illinois and that certain of its affiliates do business in Illinois and denies the balance of the allegations set forth in this paragraph.**

4. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a)(1) in that the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**ANSWER:** Admitted.

5. Venue is appropriate in this District in that the subject occurrence complained of took place within the Northern District of Illinois.

**ANSWER:** Admitted.

6. On and prior to March 26, 2023, Defendant LIFETIME was a Minnesota Corporation which does and did business in its own capacity and/or through health club and spa affiliates in the State of Illinois.

**ANSWER:** **Life Time admits that it is a Minnesota corporation and "does and did" business in Illinois and that certain of its affiliates do business in Illinois and denies the balance of the allegations set forth in this paragraph.**

7. On and prior to March 26, 2023, Defendant LIFETIME owned the health club and health club and locker rooms located at 1220 Lakeview Drive in Romeoville, Illinois.

**ANSWER:** Denied.

8. On and prior to March 26, 2023, Defendant LIFETIME controlled the health club and locker rooms located at located at 1220 Lakeview Drive in Romeoville, Illinois

**ANSWER:** Denied.

9. On and prior to March 26, 2023, Defendant LIFETIME managed the health club and locker rooms located at located at 1220 Lakeview Drive in Romeoville, Illinois.

**ANSWER:** Denied.

10. On and prior to March 26, 2023, Defendant LIFETIME maintained the health club and locker rooms located at 1220 Lakeview Drive in Romeoville, Illinois.

**ANSWER:** Denied.

11. On March 26, 2023 in the early evening, Lin was using the women's locker room in a reasonably foreseeable manner when she suddenly fell due to blow drier electrical cords hanging under the vanity counter top on or near the floor which tangled with her feet.

**ANSWER:** **Life Time lacks information sufficient to admit or deny the allegations set forth in this paragraph.**

12. At all times relevant hereto, Defendant LIFETIME as an the owner and/or occupier of the property in question, and had a duty to exercise ordinary care to see that the property was reasonably safe for the use of those lawfully on the property.

**ANSWER:** **Denied.**

13. At all times relevant hereto, Defendant LIFETIME knew, or reasonably should have known, by and through its agents and employees that there was a condition on the property which presented an unreasonable risk of harm to people on the property.

**ANSWER:** **Denied.**

14. At all times relevant hereto, Defendant LIFETIME knew or in the exercise of ordinary care should have known by and through its agents and employees of both the condition and the risk.

**ANSWER:** **Denied.**

15. At all times relevant hereto, Defendant LIFETIME by and through its agents and employees could reasonably expect that people on the property would not discover or realize the danger and/or dangerous condition of the blow drier electrical cords hanging under the vanity counter top on or near the floor which tangled with her feet

**ANSWER:** **Denied.**

16. Notwithstanding the aforementioned duty, on March 26, 2023, and prior thereto, the Defendant LIFETIME, by and through its agents and employees, was careless and negligent in one or more of the following respects:

    a. Permitted hair dryer cords under the vanity counter top to hang down into the area where members of the health club would walk to enter and leave the locker room;

    b. Failed to properly secure the hair dryer cords to prevent the cords from hanging down under the vanity counter top in an area where members were known to walk to enter and exit the locker room;

    c. Actively created a dangerous condition when it permitted hair dryer cords to hang down into the area where members of the health club would walk to enter and leave the locker room;

    d. Failed to take appropriate action to eliminate the dangerous condition when it had actual knowledge of prior similar occurrences.

**ANSWER:** **Denied.**

17. As a direct and proximate result of one or more of the aforesaid negligent acts and/or omissions of the Defendant LIFETIME, the Plaintiff JIN sustained injuries of a personal and pecuniary nature, incurred medical expenses, sustained wage loss, and has experienced and continues to experience pain, suffering, disfigurement and loss of a normal life.

**ANSWER:** **Denied.**

### AFFIRMATIVE DEFENSES

Defendants, for their affirmative defenses to the Complaint, without prejudice to their foregoing answers and denials, and in the alternative, state as follows:

### First Affirmative Defense – Contributory Negligence

1. On and prior to March 26, 2023, Plaintiff had the legal duty to exercise due care and regard for her own safety and protection.

2. Notwithstanding this duty under the circumstances, at and prior to the time and place alleged in Plaintiff's Complaint, Plaintiff failed to exercise due care, and was guilty of negligence which caused or contributed to her alleged injuries when she carelessly and negligently:

   a. failed to exercise reasonable care;

   b. failed to keep a proper lookout for her own safety;

   c. failed to exercise proper caution so as to avoid potential hazards;

   d. failed to observe open and obvious hazards; and/or

   e. knew or in the exercise of ordinary care, should have known of the alleged dangerous condition and failed to take proper precautions necessary to prevent injury to herself.

3. Plaintiff was otherwise careless and negligent at and prior to the time and place of the occurrence alleged in the Complaint.

4. The injuries and losses alleged to have been sustained by Plaintiff were, in fact, caused in whole or in part by the negligent conduct of Plaintiff herself.

5. Such conduct of Plaintiff should be compared to the alleged negligent conduct of Defendant, for the purpose of determining what, if any, percentage of liability or fault should be allocated to Defendant, in comparison to that conduct of Plaintiff.

6. If a verdict or judgment for damages is rendered against Defendant in this cause, it is entitled to a reduction in the amount of such damages in an amount equal to the percentage by which Plaintiff's own negligence or fault contributed to Plaintiff's injuries or damages.

### Second Affirmative Defense – Negligence Greater than 50%

1-4. Defendant re-alleges and incorporates by reference paragraphs 1 through 4 of its First Affirmative Defense as if fully set forth herein.

5. The negligence or fault of Plaintiff was more than fifty percent of the total fault contributing to proximately cause the occurrence alleged in Plaintiff's Complaint and of any injury or loss to Plaintiff allegedly resulting therefrom.

6. Plaintiff should therefore be denied recovery pursuant to 735 ILCS 5/2-1116.

### Third Affirmative Defense – Sole Proximate Cause

1-4. Defendant re-alleges and incorporates by reference paragraphs 1 through 4 of its First Affirmative Defense as if fully set forth herein.

5. The negligence or fault of Plaintiff was the sole proximate cause of the occurrence alleged in Plaintiff's Complaint and of any injury or loss to Plaintiff allegedly resulting therefrom.

6. Plaintiff should therefore be denied recovery against Defendant.

WHEREFORE, Defendant, LIFE TIME, INC., denies that Plaintiff is entitled to judgment against it in any amount, and prays that, based upon the foregoing, Plaintiff's claims against it be dismissed with prejudice.

### COUNTERCLAIM FOR BREACH OF CONTRACT

1. On December 2, 2021 Plaintiff entered into a Member Usage Agreement (the MUA") with LTF Club Operations Company, Inc. **Exhibit 1.**

2. The MUA provides, in part, as follows:

**PLEASE READ THIS AGREEMENT CAREFULLY AS IT AFFECTS YOUR LEGAL RIGHTS. THIS AGREEMENT CONTAINS AN ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND A BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER.**

1. **MEMBERSHIP WITH LIFE TIME.** I wish to become a member of Life Time Fitness, which is operated by LTF Club Operations Company, Inc. in the United States and it's subsidiary - or LTF Club Operations Company Canada Inc. in Canada. These companies and Life Time, Inc., their direct and indirect subsidiaries and affiliates, and all of their employees, contractors, officers, directors, agents, representatives, sponsors, volunteers and any other entity or person acting for them, and all of their successors and assigns are collectively referred to and covered by

this Member Usage Agreement ("MUA") as "Life Time." In consideration of the benefits of Life Time membership, including but not limited to the Use of Life Time Premises and Services by me…I hereby agree to all of the terms and conditions in this MUA with Life Time, including without limitation the **ASSUMPTION OF RISK, WAIVER OF LIABILITY, and ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER** below.

*****

2. **ASSUMPTION OF RISK**. I understand that there are **dangers, hazards, and risks of injury or damage, some of which are inherent, in the use of Life Time's premises, facilities, equipment, services, activities or products**, whether available through membership dues or a separate fee.

    a. **Use of Premises and Services**. I understand that **use of Life Time's premises, facilities, equipment, services, activities or products** "Use of Life Time Premises and Services") can include but is not limited to (1) use of indoor…locker rooms, restrooms…

    b. **Risks**. I understand that the **dangers, hazards, and risks** of injury or damage in the Use of Life Time Premises and Services ("Risks") may include but are not limited to **(1) slips, trips, collisions, falls, and loss of footing or balance**, …and (5) other accidents or incidents that may result in injury or damage to me, Minor Member(s), Other Member(s), or Guest(s).

*****

    c. **Injuries**. I understand that such **injuries or damages** may include but are not limited to **major or minor personal, physical, bodily, emotional, mental, economic, property or other types of injuries or damages** ("Injuries") to me…including but not limited to (1)…torn or damaged muscles or ligaments, broken bones…sprains, bruises and scrapes; (3) aggravation of pre-existing injuries or medical conditions; (4) pain and suffering…(6) emotional distress, embarrassment, humiliation, or shock; (7) lost wages or lost earning capacity…and (9) any other disability, impairment, incapacity, injury or damage.

I understand that Risks and Injuries in the Use of Life Time Premises and Services (collectively, "Risks of Injury") **may be caused, in whole or in part, by the NEGLIGENCE OF LIFE TIME**, me, Minor Member(s), Other Member(s), Guest(s) and/or other persons. **I FULLY UNDERSTAND, AND VOLUNTARILY AND WILLINGLY ASSUME, THE RISKS OF INJURY.**

3. **WAIVER OF LIABILITY**. On behalf of myself…personal representatives, heirs and assigns, I hereby voluntarily and forever **release and discharge Life Time from**, covenant and **agree not to sue Life Time for**, and **waive, any claims,**

demands, actions, causes of action, debts, damages, losses, costs, fees, expenses or any other alleged liabilities or obligations of any kind or nature, whether known or unknown (collectively, "Claims") **for any Injuries to me**…in the Use of Life Time Premises and Services **which arise out of, result from, or are caused by any NEGLIGENCE OF LIFE TIME**, me, any Minor Member(s), any Other Member(s), any Guest(s), and/or any other person…**(collectively, "Negligence Claims").**

    a.    **Negligence Claims.** I understand that Negligence Claims include but are not limited to Life Time's (1) negligent design, construction (including renovation or alteration), repair, maintenance, operation, supervision, monitoring, or provision of Life Time Premises and Services; (2) negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition; (3) negligent failure to provide or keep premises in a reasonably safe condition; (4) negligent provision of or failure to provide emergency care; (5) negligent hiring, selection, training, instruction, certification, supervision or retention of employees, independent contractors or volunteers…or (7) other negligent act(s) or omission(s).

    b.    **Life Time's Fees and Costs.** I specifically agree that, if I…assert a Negligence Claim agianst Life Time and/or breach my agreement not to sue Life Time, **I will pay all reasonable fees (including attorneys' fees), costs and expenses incurred by Life Time ("Life Time's Fees and Costs") to defend (1) the Negligence Claim(s)** and (2) all other Claims based on the same facts as the Negligence Claims(s).

**Exhibit 1.** at §§1-3, *emphasis in original*.

    3.    At the end of the Member Usage Agreement, immediately above the area where Plaintiff signed it, the agreement states:

**I HAVE READ, UNDERSTOOD, RECEIVED A COPY OF, AND AGREE TO ALL TERMS AND CONDITIONS OF THIS MUA, INCLUDING SPECIFICALLY THE ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER UNDER WHICH I AM RELINQUISHING LEGAL RIGHTS.**

*Id.* at p. 5, *emphasis in original*.

    4.    The MUA was in force and effect at the time of Plaintiff's alleged injury.

5. In breach of her agreement not to sue Life Time, Plaintiff brought the captioned lawsuit alleging negligence that falls within the definition of "Negligence Claims" as defined by the MUA.

6. Life Time has and will continue to incur fees, costs and expenses as defined by the MUA to defend Plaintiff's claims.

7. Pursuant to the terms of the MUA, Life Time is entitled to its fees, costs and expenses as defined by the MUA.

WHEREFORE, Defendant LIFE TIME, INC., prays for judgment in an amount equal to the fess, costs, and expenses incurred by it in defending this action.

Respectfully submitted,

By: /s/ *Michael L. Hahn*
Michael L. Hahn
LITCHFIELD CAVO, LLP

Michael L. Hahn
Stephen M. Cady
**LITCHFIELD CAVO LLP**
303 West Madison, Suite 300
Chicago, Illinois 60606
(312)781-6569/6557
(312)781-6630 facsimile
Hahn@LitchfieldCavo.com
Cady@LitchfieldCavo.com

# EXHIBIT 1

*Jin Min v. Life Time Fitness, Inc.*
25-cv-01668
Exhibit to Defendant's Answer, Affirmative Defenses, and Counterclaim

Case: 1:25-cv-01668 Document #: 21-4 Filed: 06/24/25 Page 12 of 16 PageID #:86
Case: 1:25-cv-01668 Document #: 8-1 Filed: 04/18/25 Page 2 of 6 PageID #:22
11/13/23, 2:37 PM    about:blank

**LIFE TIME**
HEALTHY WAY OF LIFE

# Member Usage Agreement

**Member Name:** Jin Min      **Additional Members:**
**Member Number:** 111952844

**PLEASE READ THIS AGREEMENT CAREFULLY AS IT AFFECTS YOUR LEGAL RIGHTS. THIS AGREEMENT CONTAINS AN ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND A BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER.**

1. **MEMBERSHIP WITH LIFE TIME.** I wish to become a member of Life Time Fitness, which is operated by LTF Club Operations Company, Inc. in the United States and it's subsidiary - or LTF Club Operations Company Canada Inc. in Canada. These companies and Life Time, Inc., their direct and indirect subsidiaries and affiliates, and all of their employees, contractors, officers, directors, agents, representatives, sponsors, volunteers and any other entity or person acting for them, and all of their successors and assigns are collectively referred to and covered by this Member Usage Agreement ("MUA") as "Life Time." In consideration of the benefits of Life Time membership, including but not limited to the Use of Life Time Premises and Services by me, any of my minor children or wards who are Life Time members ("Minor Member(s)"), any other adults on my membership ("Other Member(s)"), or any of my guests ("Guests"), I hereby agree to all of the terms and conditions in this MUA with Life Time, including without limitation the **ASSUMPTION OF RISK, WAIVER OF LIABILITY, and ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER** below. Additionally, if I am a Partner Member or any other Additional Member of the Primary Member, I hereby agree on my own behalf to be jointly and severally liable for all the terms and obligations of the General Terms Agreement.

2. **ASSUMPTION OF RISK.** I understand that there are **dangers, hazards, and risks of injury or damage, some of which are inherent, in the use of Life Time's premises, facilities, equipment, services, activities or products,** whether available through membership dues or a separate fee.

    a. **Use of Premises and Services.** I understand that **use of Life Time's premises, facilities, equipment, services, activities or products** ("Use of Life Time Premises and Services") can include but is not limited to (1) use of indoor and outdoor pools, waterslides, sauna, steam rooms, locker rooms, restrooms, rock climbing structures, racquet courts, studios, fitness floors, fitness equipment, gymnasiums, child centers, kid's play areas, spa and salon, medi-spa, clinic or lab space, cafe, stairways, lobby, entryways, sidewalks, parking lots and any other facilities or equipment; (2) use of personal training services; group fitness classes (including yoga); child center services; kid's programs; spa and salon, medi-spa, or chiropractic services; and weight loss or nutritional programs; (3) use of services and participation in activities off Life Time premises, including but not limited to running, cycling, mountain biking, personal training, group fitness, athletic events, educational programs, wellness programs, travel programs, and field trips; and (4) all other programs, activities, classes, sessions, seminars, workshops, assessments, events, amenities, or benefits that are sponsored, endorsed or operated by Life Time on or off its premises.

    b. **Risks.** I understand that the **dangers, hazards, and risks** of injury or damage in the Use of Life Time Premises and Services ("Risks") may include but are not limited to **(1) slips, trips, collisions, falls, and loss of footing or balance, including "slip and falls" and falls from rock climbing structures or fitness equipment; (2) drowning; (3) equipment failure, malfunction, or misuse; (4) property or information theft, loss, misuse or damage, including from lockers, vehicles, equipment, files or systems;** and (5) other accidents or incidents that may result in injury or damage to me, Minor Member(s), Other Member(s), or Guest(s).

Case: 1:25-cv-01668 Document #: 21-4 Filed: 06/24/25 Page 13 of 16 PageID #:87
Case: 1:25-cv-01668 Document #: 8-1 Filed: 04/18/25 Page 3 of 6 PageID #:23

11/13/23, 2:37 PM						about:blank

    c. **Injuries.** I understand that such **injuries or damages** may include but are not limited to **major or minor personal, physical, bodily, emotional, mental, economic, property or other types of injuries or damages** ("Injuries") to me, Minor Member(s), Other Member(s) or Guest(s), including but not limited to (1) death; (2) paralysis, brain damage, heart attacks, strokes, disfigurement, heat stress and/or heat stroke, dehydration, concussions, hearing loss, torn or damaged muscles or ligaments, broken bones, allergic reactions, burns, sprains, bruises and scrapes; (3) aggravation of pre-existing injuries or medical conditions; (4) pain and suffering; (5) loss of consortium, love, affection, comfort, companionship, or care; (6) emotional distress, embarrassment, humiliation, or shock; (7) lost wages or lost earning capacity; (8) lost, stolen, misused or damaged property or information; and (9) any other disability, impairment, incapacity, injury or damage.

I understand that Risks and Injuries in the Use of Life Time Premises and Services (collectively, "Risks of Injury") **may be caused, in whole or in part, by the NEGLIGENCE OF LIFE TIME**, me, Minor Member(s), Other Member(s), Guest(s) and/or other persons. **I FULLY UNDERSTAND, AND VOLUNTARILY AND WILLINGLY ASSUME, THE RISKS OF INJURY.**

3. **WAIVER OF LIABILITY.** On behalf of myself and my spouse/partner, children/Minor Members, Other Members, Guests, parents, guardians, heirs, next of kin, personal representatives, heirs and assigns, I hereby voluntarily and forever **release and discharge Life Time from**, covenant and **agree not to sue Life Time for**, and **waive, any claims**, demands, actions, causes of action, debts, damages, losses, costs, fees, expenses or any other alleged liabilities or obligations of any kind or nature, whether known or unknown (collectively, "Claims") **for any Injuries** to me, Minor Member(s), Other Member(s), or Guest(s) in the Use of Life Time Premises and Services **which arise out of, result from, or are caused by any NEGLIGENCE OF LIFE TIME**, me, any Minor Member(s), any Other Member(s), any Guest(s), and/or any other person and, if in Canada, any **breach by Life Time of the Occupiers' Liability Act (Ontario) (collectively, "Negligence Claims").**

    a. **Negligence Claims.** I understand that Negligence Claims include but are not limited to Life Time's (1) negligent design, construction (including renovation or alteration), repair, maintenance, operation, supervision, monitoring, or provision of Life Time Premises and Services; (2) negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition; (3) negligent failure to provide or keep premises in a reasonably safe condition; (4) negligent provision of or failure to provide emergency care; (5) negligent hiring, selection, training, instruction, certification, supervision or retention of employees, independent contractors or volunteers; (6) negligent collection, use, disclosure or storage of personal, sensitive or other information (including negligent failure to implement or maintain information security controls); or (7) other negligent act(s) or omission(s).

    b. **Life Time's Fees and Costs.** I specifically agree that, if I (on my own behalf or on behalf of another, including an estate) assert a Negligence Claim against Life Time and/or breach my agreement not to sue Life Time, **I will pay all reasonable fees (including attorneys' fees), costs and expenses incurred by Life Time ("Life Time's Fees and Costs") to defend (1) the Negligence Claim(s)** and (2) all other Claims based on the same facts as the Negligence Claim(s).

4. **DEFENSE AND INDEMNIFICATION.** On behalf of myself and my spouse/partner, children/Minor Member(s), Other Member(s), Guest(s), parents, guardians, heirs, next of kin, personal representatives, heirs and assigns, **I agree to defend, indemnify and hold Life Time harmless to the fullest extent permitted by law from and against any Claim (including any Negligence Claim) asserted against Life Time by any other person** (including but not limited to any Other Member, any Guest, any other Life Time member or guest, any family member who is not a Life Time member, or any other person or entity) arising out of, resulting from, caused by the Use of Life Time Premises and Services by me, Minor Member(s), Other Member(s), or Guest(s). My agreement to **defend Life Time** means that I will pay all of Life Time's Fees and Costs incurred to defend the Claim from the date the Claim is asserted. My agreement to **indemnify and hold Life Time harmless** means that I will pay any **settlement, judgment, or other damages, fees or costs of any type** incurred by Life Time to resolve the Claim.

Case: 1:25-cv-01668 Document #: 21-4 Filed: 06/24/25 Page 14 of 16 PageID #:88
Case: 1:25-cv-01668 Document #: 8-1 Filed: 04/18/25 Page 4 of 6 PageID #:24
11/13/23, 2:37 PM                                                                                          about:blank

5. **HEALTH AND SAFETY.** I will present my membership card in order to access Life Time centers. I represent that I am healthy enough to engage safely in the Use of Life Time Premises and Services, and that I have had the opportunity to talk to a doctor prior to Use of Life Time Premises and Services, which Life Time strongly recommends. I acknowledge that Life Time does not and will not provide medical advice. I agree to remove myself, Minor Member(s), Other Member(s) or Guest(s) from Use of Life Time Premises and Services if I observe any hazardous, unsafe, dangerous or defective condition, if or any of them is incapable of engaging in such Use safely, or if required or instructed to do so by Life Time. I consent to emergency care by Life Time for me, Minor Member(s), Other Member(s), or Guest(s). **I acknowledge that I am responsible for my own conduct, health and safety and that of Minor Member(s), Other Member(s), and Guests(s), and that Life Time is not responsible for any medical expenses incurred by me, Minor Member(s), Other Member(s), or Guest(s), in connection with the Use of Life Time Premises and Services.**

6. **PARENT OR GUARDIAN AGREEMENT.** If I am the **parent or legal guardian of a Minor Member**, I acknowledge and represent to Life Time that I have the right and authority to make decisions concerning the care, custody and control of each Minor Member, including but not limited to the right and authority to execute this MUA on the Minor Member's behalf. By signing this MUA, I am binding each of my Minor Member(s) to its terms, including but not limited to the **ASSUMPTION OF RISK, WAIVER OF LIABILITY, DEFENSE AND INDEMNIFICATION, ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER** and **HEALTH AND SAFETY** provisions.

7. **CLUB POLICIES; MEMBERSHIP TERMINATION OR SUSPENSION BY LIFE TIME.** I understand that Life Time retains complete control over all matters affecting or relating to its members and memberships, including but not limited to membership levels and types, access, prices, dues, fees, premises, facilities, equipment, services, products, programs, activities, classes, sessions, seminars, workshops, assessments, events, amenities or benefits, all of which are subject to change at any time without notice. I will comply, and ensure that Minor Member(s), Other Member(s) and Guest(s) comply, with Life Time's policies, procedures, rules, and regulations ("Club Policies"), whether set forth on paper, verbally, in club signage, or online at www.lifetime.life or other Life Time website. Life Time may change, modify or otherwise alter any Club Policies at any time without notice. I understand that Life Time may in its sole discretion terminate or suspend my membership or any aspect thereof, including but not limited to applicable guest privileges, for any reason, including but not limited to any conduct by me, Minor Member(s), Other Member(s) or Guest(s) that violates any Club Policies or that Life Time determines to be improper, inappropriate, or contrary to its best interests. For *California residents*, please review https://my.lifetime.life/policy/ca-privacy-policy.html for information about our privacy practices, including the information we collect and your rights relating to your information.

8. **ELECTRONIC COMMUNICATIONS.** I expressly consent to receive electronic messages from Life Time at any email address I have provided to Life Time, including messages whose primary purpose is to advertise or promote products or services ("Marketing Messages") and messages whose primary purpose relateds to my transactions or relationship with Life Time, including membership, purchase of products or services, or amendments to this MUA ("Transactional Messages").

9. **IMAGE AND LIKENESS RELEASE.** I understand that Life Time may take photographs, audio or video recordings, or testimonial accounts that may contain the name, image, voice, likeness or account of me or my Minor Members (collectively "Images") during the Use of Life Time Premises and Services. I hereby irrevocably consent to and grant Life Time the exclusive, worldwide, perpetual, royalty-free and otherwise unlimited right to use, copy, modify, distribute, publicly display and perform, publish, transmit, remove, retain, repurpose, and commercialize any and all such Images (and the right to sublicense such images through unlimited levels of sublicensees) in any and all media or form of communication whether now existing or hereafter developed, without obtaining additional consent, without restriction or notification, and without compensating me in any way, and to authorize others to do the same. Without limiting the foregoing, I hereby consent to Life Time's use of the Images for commercial and promotional use, including on corporate or employee social media. Life Time may change, modify, rearrange, add, delete or otherwise alter such Images. I waive any right to inspect, approve, or edit such Images as used by Life Time.

10. **ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER**

Case: 1:25-cv-01668 Document #: 21-4 Filed: 06/24/25 Page 15 of 16 PageID #:89
Case: 1:25-cv-01668 Document #: 8-1 Filed: 04/18/25 Page 5 of 6 PageID #:25
11/13/23, 2:37 PM                                                            about:blank

a. <u>Mandatory Binding Individual Arbitration</u>. Except as expressly provided below, Life Time and I (each a "party" or, together, "us," "we" or "parties") agree that any dispute, claim, case, or controversy (whether based in tort, contract, statute, regulation, ordinance, equity or any other legal theory) between us (whether arising out of or relating to past, present or future acts or omissions) ("Claims") shall be exclusively resolved by binding arbitration on an individual basis, rather than in court ("Arbitration Agreement").

b. <u>Waiver of Class Actions</u>. We each agree that we will assert Claims in arbitration only in our individual capacity, and not as a representative or member of any purported class. We each agree that we will not participate in any class, mass, collective, consolidated, private attorney general or other representative arbitration proceeding. Each party agrees that the arbitrator has no authority to arbitrate Claims on a class-wide basis and shall not consolidate, combine, or jointly arbitrate Claims of more than one person in a single arbitration.

c. <u>Waiver of Jury Trial</u>. We waive our constitutional and statutory rights to go to court and have a trial in front of a judge or a jury, electing instead to resolve by binding arbitration all Claims.

d. <u>Claims Not Subject to Arbitration</u>. There are only three exceptions to this Arbitration Agreement:

   i. <u>Small Claims</u>. Either party may bring individual Claims in small claims court.

   ii. <u>Personal Injury Claims</u>. Both parties must litigate personal injury Claims in court. For purposes of this exception, personal injury Claims are Claims arising from injury to the physical structure of the human body.

   iii. <u>Emergency Equitable Relief</u>. Either party may seek temporary injunctive relief or other equitable relief in court pending arbitration. A request for interim measures will not be deemed a waiver of any other rights or obligations under this Arbitration Agreement.

e. <u>Arbitration Procedures</u>. Either party may initiate an arbitration proceeding, which will be conducted by a single neutral arbitrator.

   i. <u>Arbitration Providers</u>. Each party has a choice of initiating arbitration before either the American Arbitration Association ("AAA") or JAMS, which are both established alternative dispute resolution providers ("ADR Providers"). If neither AAA nor JAMS is available to arbitrate, we will agree to select an alternative ADR Provider to administer the arbitration in this Arbitration Agreement.

   ii. <u>Arbitration Rules</u>. The arbitration will be conducted under the AAA Consumer Arbitration Rules (available at www.adr.org) or JAMS Streamlined Arbitration Rules and Procedures (available at www.jamsadr.com) ("Arbitration Rules"). The rules of the ADR Provider will govern all aspects of the arbitration, except to the extent such rules are in conflict with this Arbitration Agreement.

   iii. <u>Arbitration Location</u>. The arbitration hearing will be held at the ADR Provider's location that is closest to the claimant's primary residence, unless the claimant primarily resides outside the United States (in which case the arbitrator will give the parties reasonable notice of the date, time and place of any oral hearings.)

   iv. <u>Fees</u>. Payment of all filing, administrative, and arbitrator fees will be governed by the Arbitration Rules.

Case: 1:25-cv-01668 Document #: 21-4 Filed: 06/24/25 Page 16 of 16 PageID #:90
Case: 1:25-cv-01668 Document #: 8-1 Filed: 04/18/25 Page 6 of 6 PageID #:26
11/13/23, 2:37 PM　　　　　　　　　　　　　　　　　　about:blank

v. **Arbitrator's Authority and Award.** The arbitrator will decide the rights and liabilities, if any, of the parties, and the dispute will not be consolidated with any other matters or joined with any other cases or parties. The arbitrator will have the authority to grant motions dispositive of all or part of any Claim. The arbitrator will have the authority to award monetary damages, and to grant any non-monetary remedy or relief available to an individual under applicable law, the ADR Provider's Rules, and this Arbitration Agreement. The arbitrator will issue a written award and reasoned statement of decision describing the essential findings and conclusions on which the award is based, including the calculation of any damages awarded. The arbitrator has the same authority to award relief on an individual basis that a judge in a court of law would have. Any award will be subject to judicial confirmation or entry in any court having jurisdiction.

f. **Governing Law.** This Arbitration Agreement is governed by the Federal Arbitration Act and federal arbitration law.

g. **Confidentiality.** All aspects of the arbitration proceeding, including but not limited to the award of the arbitrator and compliance therewith, will be strictly confidential. The parties agree to maintain confidentiality unless otherwise required by law. This paragraph will not prevent a party from submitting to a court of law any information necessary to enforce this Arbitration Agreement or to enforce an arbitration award.

11. **SEVERABILITY.** I agree that this MUA, including without limitation the **ASSUMPTION OF RISK, WAIVER OF LIABILITY**, and **ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER**, is intended to be as broad and inclusive as permitted under applicable law. If a court declares any part of this MUA unenforceable, invalid or void, that part alone shall be severed from this MUA, and the entire remainder of the MUA, including any partially enforceable provision, shall be fully binding and enforceable to the maximum extent permitted by applicable law.

12. **OTHER PROVISIONS.** I am not relying on any oral or written promises, representations, statements, covenants or warranties, other than those set forth herein, to induce me to sign this MUA. This MUA may be amended at any time by Life Time upon such notice, if any, as may be required by law. If Life Time fails to enforce any right in this MUA for any reason, Life Time does not waive its right to enforce it later.

**I HAVE READ, UNDERSTOOD, RECEIVED A COPY OF, AND AGREE TO ALL TERMS AND CONDITIONS OF THIS MUA, INCLUDING SPECIFICALLY THE ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER UNDER WHICH I AM RELINQUISHING LEGAL RIGHTS.**

Signed by Member: Jin Min

Thu Dec 02 2021 18:19:45 GMT-0600 (Central Standard Time)