**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JIN MIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:25-CV-01668 |
| | ) | |
| LIFE TIME FITNESS, INC., | ) | Judge Robert Gettleman |
| a Minnesota Corporation, | ) | |
| | ) | Magistrate Judge Daniel McLaughlin |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT**

NOW COMES Plaintiff, JIN MIN, and as her response in opposition to Defendant's

Motion for Summary Judgment [ECF Docs. 19, 20], states as follows:

**RESPONSE SUMMARY**

Defendant[1] has moved for summary judgment on Plaintiff's Complaint, which is

comprised of a one-count premises-liability claim that arises from her trip and fall on the cord of

an obscured, undercounter-mounted hair dryer in the locker room at a physical-fitness center

owned and/or operated by Defendant.  Defendant seeks judgment at the outset of discovery,

before Plaintiff or any representative of Defendant has been deposed and with minimal written

discovery completed, on the basis that Plaintiff executed a membership agreement, entitled

"Member Usage Agreement" ("MUA"), in which she waived and released all rights to sue

Defendant for personal injuries sustained at its facility.  Defendant also seeks summary judgment

---

[1]   Actually, Movant is an entity called Life Time, Inc., which asserts it has been incorrectly sued as Life Time
Fitness, Inc., its former name.

on its counterclaim against Plaintiff, which alleges breach of contract and seeks Defendant's attorney fees and costs in defending this action. Whether the MUA is valid and enforceable against Plaintiff requires resolution of several disputed fact issues that cannot and should not be decided via summary judgment. Additionally, it is Defendant who has breached the MUA by asserting its counterclaim against Plaintiff, contrary to provisions within the MUA that require litigation in court of all personal-injury claims, and arbitration as the sole means of determining contract claims.

The first obstacle to obtaining summary judgment is that Defendant's failure to provide Plaintiff a copy of the MUA when she signed it violated the Illinois Physical Fitness Services Act ("Act"), which requires businesses such as Defendant to provide copies of membership agreements to members at the time of execution, and such violation renders the MUA unenforceable. *See* 815 ILCS 645/4, 9.

The second obstacle to obtaining summary judgment is that Defendant has disputed many of the material allegations of Plaintiff's Complaint, and Plaintiff has denied several material facts that Defendant asked her to admit in a Rule 36 Request for Admissions.[2] Thus, while Defendant appears to have intentionally submitted a particularly sparse *Statement of Material Facts*, the record demonstrates that disputed fact issues pervade the pleadings and are also evident in the party discovery responses. If Defendant contends none of the disputed facts preclude summary judgment on the grounds it has asserted, that simply reflects Defendant's failure to acknowledge the well-established contract principles that govern the enforceability of the MUA.

Those principles and the affirmative evidence Plaintiff submits herewith are a third

obstacle to Defendant's bid for summary judgment. Contemporaneously herewith, Plaintiff submits evidence demonstrating that the facts surrounding the MUA's execution establish its procedural unconscionability. Such evidence includes Plaintiff's affidavit, attesting that she speaks and reads limited English, was not given a meaningful opportunity to review the MUA before signing it, and was not provided a copy of the MUA when she joined Life Time. (*See* Plaintiff's SOF ¶¶1-10 and Group Exhibit 1 thereto). (Defendant has provided no evidence to refute any of these facts to date, but is anticipated to attempt to do so in its reply brief and submissions). In short, the parties dispute material facts that are necessary to a determination of enforceability of the MUA, and such disputes necessarily preclude summary judgment in Defendant's favor.

Alternatively, the facts Plaintiff has established, coupled with the necessary legal conclusion that the MUA is substantively unconscionable, may appropriately lead the Court to conclude the MUA is unenforceable under Illinois law. Even setting aside the procedural unconscionability of Defendant's procurement of the MUA and violation of the Act, an objective reading of the MUA reveals it is internally contradictory, and cannot reasonably be interpreted to be as broad in scope as Defendant's contend, either of which defect should prevent its enforcement against Plaintiff. While the former defect can be decided as a question of law, the latter issue, *i.e.*, whether the dangerous condition that caused Plaintiff's injury (an obscured, loose, hair dryer cord) would have been a risk reasonably contemplated or assumed by any member, requires determination of disputed factual issues that are not appropriate for summary judgment. Whether the activity being performed when Plaintiff was injured was one

---

[2]     *See* Answer, ECF Doc. 21-4, attached as Exhibit D to Defendant's Statement of Material Facts ("SOF"); *see also* Plaintiff's Responses to Defendant's Requests for Admissions, attached

contemplated by the express terms of the MUA, whether the risk and type of injury sustained by Plaintiff were foreseeable, and whether the dangerous condition here was one that would ordinarily accompany exercising at a gym and have been reasonably contemplated by Plaintiff, or any member, are all factual issues that must be resolved by a jury. *See, e.g., Hawkins v. Capital Fitness, Inc.*, 2015 IL App (1st) 133716, ¶20.

In sum, for the foregoing, multiple and varied reasons, summary judgment is not warranted or appropriate here, and Defendant's motion should be denied.

## I.    APPLICABLE LEGAL STANDARDS

This case asserts one tort claim based on state law, and federal-question jurisdiction exists pursuant to the Court's diversity jurisdiction; therefore, the substantive law of the forum state, Illinois, governs. *See Gasperini v. Ctr. for Humans., Inc.,* 518 U.S. 415, 427, 116 S. Ct. 2211, 2219, 135 L. Ed. 2d 659 (1996) ([u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law).  Defendant does not contend otherwise.  [ECF Docs. 19, 20].

Under federal procedural law, summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Edward Orton, Jr. Ceramic Found.,* 71 F.4th 601, 609 (7th Cir. 2023) (citing Fed. R. Civ. P. 56(a) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*.  (internal citations omitted).  The applicable substantive law determines which facts are material.   *Id*. (internal citations omitted).

---

as Exhibit 3 to Plaintiff's Rule 56.1(b)(3) *Additional Statement of Facts* ("Plaintiff's SOF").

## II.    MATERIAL FACTS DISPUTED BY PLAINTIFF, OR ESTABLISHED BY HER ADDITIONAL STATEMENT OF FACTS, WHICH PRECLUDE SUMMARY JUDGMENT.

*Defendant's Statement of Undisputed Material Facts* ("SOF") submitted in support of its *Motion for Summary Judgment* partially establishes only four (4) basic facts, and fails to establish many facts that are material to the enforceability of the MUA.    [ECF Doc. 21]. Specifically, Defendant's SOF establishes only the following:   (1) that Plaintiff became a member of Life Time at a fitness center located in Romeoville, Illinois on December 2, 2021, and signed the MUA on that date (SOF 1.); (2) that Plaintiff filed her Complaint against Defendant alleging negligence on February 18, 2025 (SOF 2.); (3) that Plaintiff's Complaint alleges she was injured on March 26, 2023, when she tripped on blow dryer electrical cords hanging from a vanity counter in the woman's locker room at the club (SOF 4.); and (4) that Defendant has answered and asserted affirmative defenses to Plaintiff's Complaint, and asserted a counterclaim against her for breach of contract.   (*See* Plaintiff's Response to Defendant's Statement of Material Facts, filed contemporaneously herewith).

These bare-bone facts fall far short of establishing that Defendant is entitled to summary judgment.   Defendant has failed to establish facts that are critical to the enforceability of the MUA.   Those facts, which courts find relevant and compelling under Illinois law, are discussed in detail in the Argument section below.   Additionally, *Plaintiff's Additional Statement of Material Facts,* filed herewith, establishes: (1) that Plaintiff does not speak or read English well (Pltf's SOF ¶2); (2) when Plaintiff enquired about joining Life Time Fitness, an unidentified Lifetime employee simply asked her to sign her name on an electronic pad, and she did so (Pltf's SOF ¶2); (3) Plaintiff was not given a written copy of the 5-page MUA at the time she was asked

to sign the keypad (Pltf's SOF ¶¶2, 4, 7); (4) Plaintiff was not informed the MUA included assumption of risk and waiver of liability provisions (Pltf's SOF ¶5); (5) Plaintiff was not informed the MUA contained an alleged waiver of her right to sue Lifetime for negligence and allegedly required her to pay all of Life Time Fitness' attorney fees, costs and expenses (Pltf's SOF ¶6); and, (6) having not been provided with a copy of the MUA, and not been otherwise informed of its contents, Plaintiff could not have agreed to the contents of the MUA, including the waiver, assumption-of-risk and right-to-sue waiver and attorney-fee provisions within it (Pltf's SOF ¶8).

In short, none of the factors courts consider in determining the enforceability of (purported) contracts containing exculpatory provisions have been established by Defendant, and affirmative evidence of the procedural unconscionability of the MUA has been provided by Plaintiff. Thus, Defendant cannot establish that the MUA is enforceable against Plaintiff as a matter of law, and, even if it attempts to refute some or all of Plaintiff's evidence regarding the MUA's execution, at best that will result in the creation of material, disputed fact issues that will necessarily preclude summary judgment.

### III.     ARGUMENT AND LEGAL AUTHORITY

#### A.     Defendant's Failure to Provide a Written Copy of the MUA to Plaintiff Violates the Illinois Physical Fitness Services Act, Rendering the MUA Unenforceable Against Plaintiff.

Illinois has in force the Physical Fitness Services Act ("Act"), which provides that "[e]very contract for physical fitness services shall be in writing and shall be subject to this Act." 815 ILCS 645/4. Under the Act, "[p]hysical fitness center" or "center" means any person or business entity offering physical fitness services to the public. *See* 815 ILCS 645/2(a). And,

"[p]hysical fitness services" or "services" includes instruction, training or assistance in physical culture, bodybuilding, exercising, weight reducing, figure development, judo, karate, self-defense training, or any similar activity; use of the facilities of a physical fitness center for any of the above activities; or membership in any group formed by a physical fitness center for any of the above purposes. 815 ILCS 645/2(b). Defendant falls within the Act's definition of a "physical fitness center," as demonstrated in its MUA, which offers physical fitness services to the public. *See id.* (*See also* ECF Doc. 21-2, p. 1, attached as Ex. A to Defendant's SOF).

As Defendant provides physical fitness services, all contracts entered into between defendant and plaintiffs must comply with the Act. The Act mandates that a "copy of the written contract **shall be given** to the customer at the time the customer signs the contract." 815 ILCS 645/4 (emphasis added). The Act additionally provides "any contract for physical fitness services which does not comply with the applicable provisions of this Act **shall be void and unenforceable**." 815 ILCS 645/9(c) (emphasis added). The Act also provides "any waiver by the customer of the provisions of this Act shall be void and unenforceable." 815 ILCS 645/9(b).

Here, Defendant has conspicuously ***not*** asserted, or provided evidence establishing, that it provided a written copy of the MUA to Plaintiff at the time she signed it, and Plaintiff has affirmatively attested she was *not* provided a copy of the MUA at the time she signed it. (*See* Plaintiff's Additional SOF, ¶7). Thus, it is undisputed that Plaintiff was not provided a written copy of the MUA at the time she signed it. As a result, the MUA should be deemed void and unenforceable. *See* 815 ILCS 645/9(c).

The U.S. Court of Appeals for the Seventh Circuit has recognized that the Act provides a remedy for any "customer injured by" a violation of the statute. *See Mullen v. GLV, Inc.,* 37 F.4th 1326, 1330 (7th Cir. 2022) (citing 815 ILCS 645/11). As the *Mullen* court noted, the Act

requires a plaintiff to show that she was "in some manner, deceived" by a misrepresentation or material omission.  *See id.*  Here, Plaintiff has not yet asserted a claim against Defendant based on its violation the Act.  However, if she is injured by Defendant's violation (*e.g.*, its failure to provide her a written copy of the MUA when she signed it), including by enforcement of the MUA's waiver, release, or assumption-of-risk provisions (of which she had no meaningful notice), resulting in summary judgment in Defendant's favor, she would have standing to do so.

The lack of meaningful notice to Plaintiff of the MUA's terms constitutes a material omission, which "in some manner deceived her," and she will be able to establish damages as a result of that omission.  It makes far more sense to deem the exculpatory provisions of the MUA unenforceable due to Defendant's violation of the Act (consistent with section 9(c), recited above), and have the parties litigate the merits of Plaintiff's personal-injury claim.  The damages Plaintiff would seek based on Defendant's violation of the Act will only increase if she is required to pursue the more circuitous path of recovery, as she would then also be entitled to recovery her attorney fees and costs.  *See* 815 ILCS 645/11.

### B.    The MUA is Procedurally and Substantively Unconscionable, and Therefore Should Not be Enforced Against Plaintiff.

Releases and exculpatory provision in contracts are strictly construed against the benefitting party and must spell out the intention of the parties with great particularity.  *See Scott & Fetzer Co. v. Montgomery Ward & Co.,* 112 Ill.2d 378, 395, 493 N.E.2d 1022 (1986); *Reuben H. Donnelley Corp. v. Krasny Supply Co., Inc.,* 227 Ill. App. 3d 414, 418 (1st Dist. 1999); *Stratman v. Brent,* 291 Ill.App.3d 123, 137, 683 N.E.2d 951 (1997).  In analyzing the enforceability of a contract, courts will consider whether the terms of the contract, and circumstances surrounding its execution, appear unconscionable.  *See, e.g., Jackson v. Payday*

*Fin., LLC,* 764 F.3d 765, 777–78 (7th Cir. 2014).

Under Illinois law, a contractual provision may be unconscionable on either procedural or substantive grounds. *Jackson at* 777–78 (citing *Razor v. Hyundai Motor Am.,* 222 Ill.2d 75, 854 N.E.2d 607, 622 (2006)). Federal courts and Illinois state courts agree that whether a contract is unconscionable is a matter of law to be decided by a court. *See Hanover Ins. Co. v. N. Bldg. Co.,* 751 F.3d 788, 794 (7th Cir. 2014); *see also Razor v. Hyundai Motor America,* 222 Ill.2d 75, 99, 854 N.E.2d 607 (2006). Federal courts sitting in diversity will apply the substantive contract law of the forum state in determining unconscionability. *See Hanover* at 794.

Illinois courts recognize two types of unconscionability: (i) "procedural unconscionability" occurs where "a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware [s]he was agreeing to it, and also takes into account a lack of bargaining power," and (ii) "substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor." *Razor at* 100. Put another way, procedural unconscionability "deprives the weaker party of making a meaningful choice." *In re Marriage of Tabassum,* 377 Ill.App.3d 761, 775, 881 N.E.2d 396 (2007).

In determining whether a contract is procedurally unconscionable, a court is to consider "(1) the manner in which the contract was entered into; (ii) whether each party had a reasonable opportunity to understand the terms of the contract; and (iii) whether important terms were hidden in a maze of fine print." *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 989–90, 408 N.E.2d 403 (1980). "To be a part of the bargain, a provision limiting the defendant's liability must . . . have been bargained for, brought to the purchaser's attention or be conspicuous." *Id*. at 990.

9

Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. *Kinkel v. Cingular Wireless LLC,* 223 Ill.2d 1, 857 N.E.2d 250, 267 (2006). Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, and an overall imbalance in the obligations and rights imposed by the bargain. *See id.*

Here, the MUA and its execution all bear the hallmarks of both substantive and procedural unconscionability. When Plaintiff enquired about joining Life Time Fitness, an unidentified Lifetime employee simply asked her to sign her name on an electronic pad, and she did so. (Pltf's SOF ¶2). Plaintiff was not given a written copy of the 5-page MUA at the time she was asked to sign the keypad. (Pltf's SOF ¶¶2, 4, 7). Even if she had been, she was not capable of reading the MUA due to the significant language barrier, which would have been obvious to the staff. (Pltf's SOF ¶1). Plaintiff was not informed the MUA included assumption of risk and waiver of liability provisions. (Pltf's SOF ¶5). Plaintiff was not informed the MUA contained an alleged waiver of her right to sue Lifetime for negligence and allegedly required her to pay all of Life Time Fitness' attorney fees, costs and expenses. (Pltf's SOF ¶6). Having not been provided with a copy of the MUA, and not been otherwise informed of its contents, Plaintiff could not have agreed to the contents of the MUA, including the waiver, assumption-of-risk and right-to-sue waiver and attorney-fee provisions within it. (Pltf's SOF ¶8).

Taken together, these facts demonstrate that Plaintiff enquired about membership, was asked to sign a keypad, and was never informed she was executing a 5-page contract containing numerous exculpatory and other Draconian terms. None of the contract terms were explained to he, and she was not provided a written copy of the MUA, either to read on site, or take home to have a family member or other English speaker translate it for her. She also was not provided a

written copy of the MUA after she signed the keypad. There is simply no way a reasonable person would believe they had just signed a complicated, 5-page document waiving many important legal rights. These circumstances reflect all of the classic indicia of procedurally-unconscionable contract formation, and the MUA should not be enforced against Plaintiff on that basis.

The contract also bears all the hallmarks of substantive unconscionability. It contains less than one full paragraph conferring membership to Plaintiff and describing her rights to use Defendant's facilities, and the remainder of the document contains exculpatory, release, assumption-of-risk, and other provisions, most of which are clearly intended only to benefit Defendant. This is a classic example of a one-sided contract. There is an extreme imbalance in the rights and obligations of the parties, and members are required to forego many important legal rights, while Defendant retains virtually all possible legal rights it could have against a member, and *secures* those rights with attorney-fee provisions if its purported "right" not to be sued is violated. The MUA is both procedurally and substantively unconscionable, and should not be enforced. *See Jackson,* 764 F.3d at 781 (holding unconscionable contract provision to be unenforceable).

(Moreover, as is discussed in more detail below, the MUA is internally contradictory, indicating a member cannot sue Defendant for negligence, but *requiring* the parties to litigate Personal Injury Claims in court. (*See* ECF Doc. 21-1, p. 5, Ex. A to Deft's SOF). Thus, despite Defendant's best efforts in attempting to insulate itself from suit, it has failed to do so).

### C. Objectively Analyzing the MUA, it Does Not Clearly Encompass a Risk of Tripping on a Hair Dryer Cord, as an "Inherent" Risk in Exercising at a Fitness Center.

A legally enforceable agreement will put the plaintiff "on notice of the range of dangers

11

for which he assumes the risk of injury, enabling him to minimize the risks by exercising a greater degree of caution." *Garrison v. Combined Fitness Centre, Ltd.,* 201 Ill. App. 3d 581, 585 (1st Dist. 1990). The injury must fall within the scope of dangers ordinarily accompanying the activity and be reasonably contemplated by the plaintiff. *Garrison*, 201 Ill. App. 3d at 585. Whether the activity being performed when Plaintiff was injured was one contemplated by the express terms of the MUA, whether the risk and type of injury sustained by Plaintiff were foreseeable, and whether the dangerous condition here was one that would ordinarily accompany exercising at a gym and have been reasonably contemplated by Plaintiff, or any member, are all factual issues that must be resolved by a jury. *See Hawkins v. Capital Fitness, Inc.*, 2015 IL App (1st) 133716, ¶20.

Here, while the facts demonstrate that Plaintiff did not contemplate or believe that she was assuming *any* specific risks or waiving her right to sue Defendant for injuries sustained at its facility, even examining the MUA objectively, the Court can conclude that tripping on the cord of a hair dryer mounted under a countertop is not the type of "inherent" risk associated with exercising at a fitness center that a reasonable person would believe they were assuming when executing the MUA.

In a very similar case in another jurisdiction, Defendant litigated that very issue, and the court agreed with Plaintiff's position above. *See Stone v. Life Time Fitness, Inc*., 411 P.3d 225 (Colo. App. 2017) (a copy of this case will be provided to the Court and parties with Plaintiff's courtesy copies of this Response Brief). In that case, the plaintiff washed her hands in the fitness center's locker room sink and, when she turned to leave, she tripped on the blow dryer cord that was, unbeknownst to her, hanging to the floor beneath the sink and vanity counter top, caught her foot in the cord, and fell to the floor fracturing her right ankle. *See Stone,* 411 P.3d 225 at ¶ 3.

12

The defendant sought summary judgment based on exculpatory provisions in the plaintiff's membership agreement, and the district court held they were valid and enforceable. *Stone* at ¶ 6. On appeal, the Colorado Court of Appeals noted the language of a contract must be clear and unambiguous and unequivocal to be enforceable, and held that the agreement there, which is markedly similar to the document here, "fails this test for numerous reasons." *Stone* at ¶ 3.

The Colorado Court of Appeals observed that the focus of the agreement is on the risk of strenuous use of exercise equipment, and that use of a sink in a locker room was not the type of inherent risk of injury a party would reasonably contemplate. *See Stone* at ¶27. While *Stone* is not binding precedent in this court, it addresses similar contract terms, and similar factors and elements that Illinois courts assess in determining the scope and enforceability of exculpatory provisions, and its analysis is particularly instructive and persuasive here.

Even putting aside the procedural issues and language barrier that are present here, objectively reviewing the MUA, Plaintiff's accident was not foreseeable as a matter of law, nor would it reasonably have been contemplated to have been a risk Plaintiff (or any member) understood they were assuming by joining Life Time. At most (thought Defendant has presented no evidence to establish this), whether Plaintiff's accident was foreseeable and one that would reasonably have been contemplated to be a risk she was assuming by joining Life Time are factual determinations that must be made by a jury.

**D.    The MUA *Requires* the Parties to Litigate "Personal Injury Claims" in Court, Which Defeats Defendant's Counterclaim for Attorney Fees and Costs as a Matter of Law.**

Citing section 3. b. of the MUA, Defendant contends it is entitled to its attorney fees and costs in defending this lawsuit, because Plaintiff has breached a provision within the MUA that stated "if I ... assert a Negligence Claim against Life Time and/or breach my agreement not to

sue Life Time, I will pay all reasonable fees (including attorneys' fees), costs, and expenses incurred by Life Time ("Life Time's Fees and Costs") to defend (1) the Negligence Claim(s) and (2) all other Claims based on the same facts as the Negligence Claim(s)."  (ECF Doc. 21-1, p. 3, attached as Ex. A to Defendant's SOF).

What Defendant fails to acknowledge, however, is that the arbitration provisions within the MUA (raised by Defendant as an affirmative defense *and* addressed in its pending motion for summary judgment), *explicitly carve out* "Personal Injury Claims" from the MUA's arbitration provisions, and specifically state that the parties must litigate all Personal Injury Claims in court. Specifically, the purported "Arbitration Agreement" that begins on page 3 of the MUA provides as follows:

> **10.  ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER**
>
> **(a)  Mandatory Binding Individual Arbitration.  Except as expressly provided below, Life Time and I (each a "party" or, together, "us," "we" or "parties") agree that _any dispute_, claim, case, or controversy (whether based _in tort, contract_, statute, regulation, ordinance, equity or any other legal theory) between us (whether arising out of or relating to past, present or future acts or omissions) ("Claims") _shall be exclusively resolved by binding arbitration_ on an individual basis, rather than in court ("Arbitration Agreement").**
>
> \* \* \*
>
> (d)  **Claims Not Subject to Arbitration**.  There are only *three exceptions* to this Arbitration Agreement:
>
> \* \* \*
>
> **ii.  Personal Injury Claims.  Both parties _must litigate personal injury Claims in court_.  For purposes of this exception, personal injury Claims are Claims arising from injury to the physical structure of the human body.**
>
> \* \* \*

*See* Ex. A to Deft's SOF, ECF Doc. 21-1, p. 5 of 6 (italics and underlining added).

According to the foregoing, all "Personal Injury Claims" *must be litigated in court*. *See id.* Under the definition provided above, "Personal Injury Claims" arise from "injury to the physical structure of the human body." *See id.* Thus, the MUA on which Defendant relies *requires* that all personal-injury claims, such as Plaintiff's, be litigated in court. At best, these specific provisions conflict with the purported waiver of Plaintiff's right to sue Defendant, set forth earlier in the MUA and, under Illinois law, the MUA must be strictly construed against Defendant, in Plaintiff's favor. *See Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill.2d 378, 395, 493 N.E.2d 1022 (1986); *Harris v. Walker*, 119 Ill.2d 542, 548 (1988); *Reuben H. Donnelley Corp. v. Krasny Supply Co., Inc.,* 227 Ill. App. 3d 414, 418 (1st Dist. 1999). The language above must be applied as written and held to negate any purported waiver of Plaintiff's right to sue Defendant in court for her personal injuries.

In sum, as a matter of law, Plaintiff cannot be deemed to have breached the MUA, because it expressly requires all personal-injury claims to be litigated in court. Thus, Defendant's motion for summary judgment on its Counterclaim must be denied.

WHEREFORE, Plaintiff Jin Min respectfully requests that this Honorable Court deny Defendant's *Motion for Summary Judgment* in all respects, and award her her costs or such other relief the Court deems just.

Respectfully submitted,

By:   s/ Kent M. Lucaccioni
Kent M. Lucaccioni
Kent M. Lucaccioni, Ltd.
20 South Clark Street, Suite 1700
Chicago, IL 60603
T: (312) 425-0401
F: (312) 263-0128
Email: kent@kmlltdlaw.com
ARDC No.: 6197689