**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JIN MIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:25-CV-01668 |
| | ) | |
| LIFE TIME FITNESS, INC., | ) | Judge Robert Gettleman |
| a Minnesota Corporation, | ) | |
| | ) | Magistrate Judge Daniel McLaughlin |
| Defendant. | ) | |

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Life Time, Inc. (f/k/a Life Time Fitness, Inc.) (hereafter, "LTF" or "Defendant"), by and through its attorneys, Litchfield Cavo LLP, for its Reply in Support of its Motion for Summary Judgment, states as follows:

Plaintiff's Response in Opposition (ECF No. 29) tries to avoid her own clear, written agreement by advancing statutory and unconscionability arguments that have no support in Illinois law. None of her points create a genuine issue of material fact. Illinois courts—including this District Court—have repeatedly enforced LTF's Member Usage Agreement ("MUA") and its exculpatory provisions against nearly identical claims. Plaintiff's theories—many based only on her affidavit—do not overcome the long line of Illinois cases enforcing health-club exculpatory agreements. Her negligence claim is barred, and her lawsuit itself constitutes a breach of contract. Summary judgment should be granted in LTF's favor in full.

As a preliminary matter, Plaintiff bases much of her *Response* on her demonstrably inaccurate statement that she was not provided with a copy of the MUA when she joined Life Time. *Plaintiff's ASOMF,* ¶7; *Affidavit in Support thereof,* ¶8. She **was,** however, provided a copy of the MUA at the time she joined Life Time and was provided further access to that agreement

through Life Time's member portal. *Defendant's Statement of Additional Material Facts,* ¶¶ 4-9. Indeed, LTF's records show Plaintiff opened the email in which LTF provided her with the MUA and accessed the link to Life Time's member portal. *Id.* Consequently, much of Plaintiff's defense to the motion rings hollow in light of this inaccuracy.

### I.      Plaintiff's PFSA Argument Must be Rejected.

Plaintiff argues the MUA is unenforceable under the Illinois Physical Fitness Services Act (the "PFSA") because she allegedly did not receive a copy at signing. *Response,* pp. 7-8; SOAF ¶7. As set forth above, however, Plaintiff did receive a copy of the MUA at the time she signed it. Relevant to this issue is Illinois adoption of the Uniform Electronic Transactions Act ("UETA"). UETA makes clear that "a record or signature may not be denied legal effect or enforceability solely because it is in electronic form," and if a law requires a record "in writing," an electronic record satisfies that requirement. 815 ILCS 333/7(a), (c). That Act further provides that where a law requires information to be "provided, sent, or delivered" in writing, that duty is met if it is provided "in an electronic record capable of retention by the recipient at the time of receipt." 815 ILCS 333/8(a).

Here, Plaintiff does not dispute that she signed electronically at the time she joined. Under UETA, electronic presentation and retention satisfy any PFSA "copy" obligation without demanding a paper duplicate. The MUA was provided to Plaintiff on December 2, 2021 by email – within a minute of the time she signed the MUA. *Defendant's SOAMF*, ¶4-5.  Additionally, the MUA was available to Plaintiff via the member accessible online portal which she accessed on December 8, 2021. See Defendant's SOAMF ¶7-9. Since Plaintiff signed electronically, and since it is clear she was both provided a copy of the MUA when she joined and was given online access to the agreement, the PFSA requirements are satisfied and the agreement is enforceable. *See* Plaintiff's SOF, ECF No. 31, ¶ 2; Exhibit 3 to Plaintiff's SOF, ECF No. 31-4, RFA No. 1.

**II.     Plaintiff's Claims of Procedural or Substantive Unconscionability Cannot Defeat Summary Judgment.**

Plaintiff's unconscionability argument fails under both prongs of the doctrine. Procedurally, Illinois courts consistently hold that a party is bound by the contract she signs, regardless of whether she later claims not to have read or understood it, and language barriers or a lack of explanation do not alter that rule. *See Harris*, 519 N.E.2d at 918-20; *Mulligan*, 236 N.E.3d at 1096-97; *Mizyed v. Palos Cmty. Hosp.*, 58 N.E.3d 102, 114-17 (Ill. App. 1st Dist. 2016). Substantively, the MUA is not one-sided or oppressive; nearly identical waivers have been upheld repeatedly in Illinois, and adhesion status alone is insufficient to establish unconscionability. *See Owen v. Vic Tanny's Enters.*, 199 N.E.2d 280 (Ill. App. 1st Dist. 1964); *Kubisen v. Chi. Health Clubs*, 388 N.E.2d 44 (Ill. App. 1st Dist. 1979).

   A.     *A Signed Contract Binds Plaintiff, and Her Affidavit Cannot Establish Procedural Unconscionability.*

Plaintiff cannot avoid summary judgment through her own affidavit asserting that she did not understand or review the Member Usage Agreement. Illinois law has long held that one who signs a written agreement is bound by its terms, regardless of whether she later claims not to have read or understood it. *Harris*, 519 N.E.2d at 918-20; *Mulligan*, 236 N.E.3d at 1096-97. Plaintiff's assertion here—an after-the-fact denial of comprehension contradicted by her undisputed signature on the MUA—cannot create an issue of unconscionability.

Plaintiff's affidavit assertions that she did not understand the MUA, was not given a copy, and that no one explained its terms cannot defeat summary judgment. Illinois courts are clear that "where consumers sign contracts, courts generally hold the consumer is charged with knowledge of and assent to the terms and conditions of the contract he or she signed." *Mulligan*, 236 N.E.3d at 1096-97 (citing *Zuniga v. Major League Baseball*, 196 N.E.3d 12, 26 (Ill. App. 1st Dist. 2021);

*Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006)). This is true regardless of whether the signer later claims she did not read or understand the agreement. *Id.*

Illinois courts have also rejected attempts to avoid contracts based on limited English proficiency or illiteracy. In *Mizyed*, the plaintiff argued he could not be bound by English-language consent forms because he had limited English skills and could not read in any language. 58 N.E.3d at 114-117. The court squarely rejected this, holding that "illiteracy is not a defense to a contract" and that one who cannot read English has a duty to have the agreement read or explained before signing. *Id.* at 116 (internal citations omitted). That court specifically stated "[plaintiff's] inability to read or speak English [did] not undermine the effect of the … forms … he signed." *Id.*

Consistent with this, the Illinois Supreme Court has long held that signatories to a written agreement are bound, absent fraud or duress. *Harris*, 519 N.E.2d at 918-20. Plaintiff alleges neither. Her after-the-fact assertions of confusion therefore do not render the MUA procedurally unconscionable. Illinois law charges her with knowledge and assent to the terms she signed, and her affidavit cannot alter that result.

Moreover, Plaintiff's Statement of Facts and supporting affidavit fall short of what is required to establish a genuine issue of fact. She asserts only that her native language is Korean and that she speaks and reads limited English. Plaintiff's ASOF ¶1. She does not explain how "limited" her skills were or contend that this limitation prevented her from reading and understanding the MUA. Likewise, her statement that she was asked to "sign her name on an electronic pad" is incomplete; it does not describe the circumstances surrounding the execution of the agreement, nor does she assert that anyone misled her or prevented her from reviewing it. Plaintiff's ASOF ¶ 2. Without more, she does not raise a material factual dispute. Plaintiff, as the non-movant, bears the burden of setting forth specific facts showing a genuine issue for trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Conclusory or self-serving statements are insufficient. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Plaintiff's affidavit—asserting only in general terms that she did not understand the agreement—does not provide competent evidence that her language skills prevented comprehension. It therefore fails to create triable issues, and summary judgment should be entered for Defendant.

B. *The MUA Is Not Substantively Unconscionable; Illinois Courts Routinely Uphold Similar Waivers.*

Substantive unconscionability examines the fairness of the actual terms of a contract. It may be found where provisions are "so one-sided as to oppress or unfairly surprise an innocent party, [create] an overall imbalance in the obligations and rights imposed by the bargain, [or involve] significant cost-price disparity." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267–68 (Ill. 2006) (quoting *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995)).

Plaintiff makes no such showing here. The MUA's waiver of liability is not unusual or unfair; In fact, Illinois courts have repeatedly upheld nearly identical exculpatory clauses in health-club membership agreements. *See Owen*, 199 N.E.2d at 281-282 (upholding waiver for slip in shower); *Kubisen*, 388 N.E.2d at 46–47 (upholding waiver for fall in steam room); *Keevil v. Life Time Fitness, Inc.*, 2016 IL App (1st) 151551-U at ¶ 52 (upholding waiver for injuries incurred through improper use of pool equipment); *Titschler v. Life Time Fitness, Inc.*, No. 15-CV-0664, 2016 WL 1613545 (N.D. Ill. Apr. 22, 2016) (upholding waiver for injuries incurred during use of gym weightlifting equipment). Courts recognize that health-club contracts may allocate the risk of ordinary negligence to members without rendering the agreement substantively unconscionable.

Nor does the fact that the MUA is a standardized form contract render it unconscionable. Illinois courts recognize that adhesion contracts are a practical necessity in consumer dealings and

are enforceable unless they impose terms that are oppressive or commercially unreasonable. *Kinkel*, 857 N.E.2d at 267–68. As the Illinois Supreme Court has explained, "mere disparity in bargaining power is not sufficient grounds to vitiate contractual obligations." *Streams Sports Club, Ltd. v. Richmond*, 457 N.E.2d 1226, 1232 (Ill. 1983). Plaintiff identifies no overly oppressive terms in the MUA implicating unconscionability or that leave her without a remedy. To the contrary, the liability waiver here is typical of health-club agreements and has been repeatedly upheld in Illinois courts. Moreover, Illinois courts have rejected claims of bargaining disparity in the health-club context, as health clubs are neither scarce nor providers of essential public services. *Owen*, 199 N.E.2d at 282; *Kubisen*, 388 N.E.2d at 46–47.

Accordingly, nothing in the MUA's terms approaches the kind of oppressive or one-sided provision required to establish substantive unconscionability, nor do the circumstances of its execution support a claim of procedural unconscionability under Illinois law.

**III.     Plaintiff's Injury is Expressly within the Scope of the MUA's Exculpatory Clause.**

Plaintiff's fallback argument—that her accident was not a risk reasonably contemplated by the MUA—ignores the plain contract language and controlling Illinois precedent. The MUA explicitly lists "slips, trips, collisions, falls, and loss of footing or balance" among the risks members assume. SOF ¶ 1, Ex. A § 2b. Plaintiff's alleged injury—tripping over a hair dryer cord in the locker room—is exactly the sort of routine slip-and-fall encompassed by those terms.

Even if Plaintiff attempts to parse her accident as somehow different from the risks enumerated in the MUA, Illinois law forecloses that argument. Courts consistently hold that an exculpatory agreement need not identify the precise cause of the injury; it is sufficient that the injury falls within the general class of risks contemplated. *Garrison v. Combined Fitness Ctr., Ltd.*, 559 N.E.2d 187, 190 (Ill. App. 1st Dist. 1990). The question is whether the type of harm alleged—

here, a routine trip-and-fall in a locker room—was reasonably foreseeable under the waiver's terms, not whether the waiver anticipated the exact instrumentality of injury. *Id.*

Illinois law is clear that exculpatory clauses need not spell out the precise cause of a plaintiff's accident to be enforceable; It is enough that the injury falls within the general class of risks contemplated by the agreement. *Id.* In *Garrison*, the court explained that an exculpatory clause covers injuries so long as it appears that the "injury falls within the scope of possible dangers ordinarily accompanying the activity and, thus, reasonably contemplated by the plaintiff." *Id.*

Locker rooms and their fixtures, such as showers, are an integral part of a fitness center, and Illinois courts have recognized that activities like showering, changing, or using grooming equipment are part and parcel of a member's use of gym facilities. *See, e.g., Owen*, 199 N.E.2d at 281-282 (enforcing waiver where plaintiff slipped on wet shower floor despite alleged waiver not referencing specific defective condition); *Kubisen*, 388 N.E.2d at 46–47 (enforcing waiver where plaintiff fell in steam room and waiver was alleged to be general). Just as those courts held that exculpatory language covered accidents in locker-room facilities, so too here: tripping on a hair dryer cord in the sink area is precisely the kind of "possible danger ordinarily accompanying the activity" of gym membership. These authorities confirm that Plaintiff need not have foreseen the exact instrumentality of her injury—the dangling hair dryer cord—in order for the MUA to apply. It is enough that she expressly assumed the risk of slips, trips, and falls while using Life Time's facilities, which is precisely what she alleges occurred.

Plaintiff's reliance on inapposite authorities is also misplaced. In *Hawkins v. Capital Fitness, Inc.*, 29 N.E.3d 442, 446–51 (Ill. App. 1st Dist. 2015), the court reversed summary judgment for a defendant fitness facility because it found that the act of a mirror detaching from a wall and striking a patron during weightlifting was outside of the scope of the exculpatory clause because

7

it was not an "ordinary risk" associated with health-club activity. The court there expressly distinguished locker-room falls and similar hazards, citing *Owen* (slip on wet shower floor), *Kubisen* (fall in steam room), and *Garrison* (bar falling from exercise equipment) as examples of accidents that are within the risks contemplated by exculpatory clauses. *Id.* at 449–50. Unlike a falling mirror, which the court found akin to a collapsing wall or toxic fumes, Plaintiff's alleged trip-and-fall in the locker room is the very type of commonplace hazard Illinois courts have repeatedly held covered by health-club waivers. *Id.* at 448 (citing *Larsen v. Vic Tanny Int'l*, 447 N.E.2d 729 (Ill. App. 5th Dist. 1984)).

Plaintiff's reliance on *Stone v. Life Time Fitness, Inc.*, 411 P.3d 225 (Colo. App. 2017), is even less persuasive. *Stone* is a non-binding Colorado decision applying different state law, and its analysis conflicts with settled Illinois precedent. Illinois courts have repeatedly enforced nearly identical health-club waivers against locker-room and shower-area accidents, including *Owen* and *Kubisen*. To adopt *Stone*'s reasoning would require this Court to disregard that binding authority. Additionally, the *Stone* court based its opinion on a difference version of Life Time's MUA than at issue here rendering that opinion unhelpful here. Compare *Stone* at 233 (appendix MUA) to Defendant's SOMF Exhibit A; *Stone* at 230 (discussing ambiguous language that does not appear in subject MUA).

Illinois law requires only that Plaintiff's injury fall within the general class of risks contemplated by the waiver, and accidents in the locker room—including slips, trips, and falls like the one alleged here—are exactly that. Reliance on contrary or out-of-state authority cannot create a genuine issue of material fact.

IV.     **Plaintiff's Argument Against LTF's Counterclaim Misconstrues the Agreement.**

Plaintiff contends that because the MUA's arbitration provision carves out "personal injury claims" for litigation in court, her filing of this lawsuit cannot constitute a breach. That argument

8

conflates two distinct provisions. The arbitration clause merely allocates forum for certain disputes; the covenant not to sue is a separate, independent promise by which Plaintiff expressly waived and released negligence claims against LTF. Reading the MUA as a whole, the carve-out does not negate the waiver—it simply directs where disputed claims must proceed, if permitted.

Illinois courts analyze arbitration clauses like any other contract provision, and contracts must be construed as a whole so that each term is given effect rather than read in isolation. Courts will not interpret one clause in a way that nullifies or contradicts another. *See Calusinski v. Alden-Poplar Creek Rehab. & Health Care Ctr., Inc.*, 239 N.E.3d 521, 524-26 (Ill. App. 1st Dist. 2022) (refusing to enforce arbitration agreement that waived statutory attorney's fees but applying unconscionability only to that provision); *Ins. Benefit Grp., Inc. v. Guarantee Trust Life Ins. Co.*, 91 N.E.3d 950, 961 (Ill. App. 1st Dist. 2017). By the same logic, the MUA's arbitration carve-out for "personal injury claims" governs only forum; it does not negate the separate covenant not to sue. Construing the MUA as a whole, both provisions can be given effect without conflict.

The MUA's language confirms this reading. In a separate provision, Plaintiff expressly agreed to "waive any claims" and covenanted not to sue Life Time for injuries arising from use of its facilities. SOF ¶ 1, Ex. A § 3. Elsewhere, the Arbitration Agreement broadly requires disputes to be arbitrated, but then carves out "personal injury claims" for litigation in court. *Id.* § 10. These are distinct promises addressing different subjects: the waiver provision eliminates liability altogether, while the arbitration clause allocates forum if litigation occurs. Plaintiff's construction—that the forum carve-out nullifies the waiver—would impermissibly render the waiver a nullity. Illinois law requires the opposite: both clauses must be given effect. Because the waiver and covenant not to sue remain operative regardless of the arbitration carve-out, Plaintiff's filing of this action constitutes a breach of the MUA and entitles Life Time to judgment on its

9

counterclaim, including coverage of costs for the cost of defense as provided for contractually. *Id.* § 3b. *See also Johnson v. Human Rights Comm'n*, 527 N.E.2d 883, 886-87 (Ill. App. 1st Dist. 1988) (parties may be required to pay the opposing side's fees and costs where expressly provided for by statutory and/or contractual provisions).

Thus, the arbitration carve-out does not revive claims Plaintiff expressly waived, and her suit remains a clear breach of the MUA.

## V.    Plaintiff's Conclusory Affidavit Does Not Create a Genuine Issue of Material Fact.

Plaintiff attempts to manufacture a dispute by submitting a conclusory affidavit denying she understood or reviewed the MUA. That effort fails. Courts have long held that a party may not create an issue of fact through an affidavit that contradicts prior testimony or the undisputed record. *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532–33 (7th Cir. 1999). As discussed, Illinois law charges a signer with knowledge of the contract she executes, regardless of later claims of confusion, language difficulty, or failure to read. *See supra* at Section II.A.

Plaintiff's affidavit contradicts her undisputed signature and the plain language of the MUA. It therefore cannot establish a triable issue, and summary judgment remains proper.

### CONCLUSION

Accordingly, for the aforementioned reasons set forth above—and as further detailed in Defendant's Motion for Summary Judgment and supporting Memorandum (ECF Nos. 19–20)— Plaintiff's Response fails to raise any genuine issue of material fact. Because Plaintiff's claims are contractually barred and her lawsuit itself constitutes a breach, Defendant LTF is entitled to summary judgment on Plaintiff's Complaint in its entirety, as well as on its Counterclaim.

WHEREFORE, Defendant, Life Time, Inc. (f/k/a Life Time Fitness, Inc.), respectfully requests that this Court grant its *Motion for Summary Judgment* and enter judgment in its favor and against the Plaintiff as to her Complaint at Law, and its Counterclaim.

Respectfully submitted,
**Life Time, Inc.**

*/s/ Michael L. Hahn*
Michael L. Hahn

Michael L. Hahn
Zachary G. Stillman
**Litchfield Cavo LLP**
303 W. Madison Street, Suite 300
Chicago, IL 60606
312-781-6569 (Hahn)
312-781-6672 (Stillman)
Fax:   312-781-6630
Hahn@LitchfieldCavo.com
Stillman@LitchfieldCavo.com