**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JIN MIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:25-CV-01668 |
| | ) | |
| LIFE TIME FITNESS, INC., | ) | Judge Robert Gettleman |
| a Minnesota Corporation, | ) | |
| | ) | Magistrate Judge Daniel McLaughlin |
| Defendant. | ) | |

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendant, Life Time, Inc. (f/k/a Life Time Fitness, Inc.) (hereafter, "LTF" or "Defendant"), by and through its attorneys Litchfield Cavo LLP, and pursuant to Local Rule 56.1(a), submits the following Statement of Undisputed Material Facts in support of its Renewed Motion for Summary Judgment and Motion to Revise the Court's October 16, 2025 Interlocutory Order:

## A. BACKGROUND

1. This action arises from an incident that allegedly occurred on March 26, 2023, at a fitness facility located at 1220 Lakeview Drive, in Romeoville, Illinois (the "Club"). *See* Plaintiff's Complaint at Law (ECF No. 1), attached hereto as **Exhibit A**, ¶¶ 5, 11.

2. Plaintiff alleges that she sustained injuries when she tripped on blow-dryer electrical cords hanging from a vanity counter in the women's locker room at the Club. *Id.* at ¶ 11.

3. On February 18, 2025, Plaintiff filed her Complaint against LTF, asserting a claim for negligence arising from the alleged incident. *See* Ex. A.

4. On April 18, 2025, LTF filed its Answer and Affirmative Defenses and asserted a Counterclaim against Plaintiff for breach of contract. LTF's Answer, Affirmative Defenses, and Counterclaim (ECF No. 8), are attached hereto as **Exhibit B**.

5. Plaintiff alleges that LTF is liable in negligence for injuries arising from the March 26, 2023 incident. *See* Ex. A ¶¶ 16–18.

6. LTF's Counterclaim alleges that Plaintiff breached a Member Usage Agreement ("MUA") by asserting a negligence claim against LTF and seeks recovery of the attorneys' fees, costs, and expenses LTF has incurred in defending this action. *Id.*, Counterclaim ¶¶ 5–7.

7. On June 24, 2025, LTF moved for summary judgment on Plaintiff's Complaint and its Counterclaim based upon the terms of the MUA. *See* ECF Nos. 19–21.

8. On October 16, 2025, the Court entered a Memorandum Opinion and Order denying LTF's motion for summary judgment. A copy of the Court's Memorandum Opinion and Order (ECF No. 38) is attached hereto as **Exhibit C**.

9. The Court concluded that the record then before it contained a genuine factual dispute concerning whether Plaintiff entered into the MUA. Ex. C at 5–6.

10. In reaching that conclusion, the Court observed that the prior record contained no evidence concerning what information appeared on the electronic pad Plaintiff signed and no transaction-specific evidence that Plaintiff was informed of the MUA's terms or provided an opportunity to review them before signing. *Id.* at 1–2, 5.

11. The parties thereafter completed fact discovery, including Plaintiff's deposition on March 10 and March 11, 2026. The transcript from Day 1 of Plaintiff's deposition is attached hereto as **Exhibit D**.

## B. PLAINTIFF'S MEMBERSHIP HISTORY AND THE DECEMBER 2, 2021, TRANSACTION

12. Before joining the Club, Plaintiff had previously been a Life Time member at its Warrenville location for many years. Ex. D at 36:20–37:16.

13. Plaintiff's prior membership ended before December 2021. *Id.* at 37:6–12.

14. On December 2, 2021, Plaintiff went to the office at the Romeoville Club and met with a Life Time representative for the purpose of joining or rejoining Life Time. *Id.* at 34:17–21, 37:23–38:12. LTF's records reflect that Plaintiff electronically signed the MUA at 6:19 p.m. that same day. *See* Affidavit of Brad Idelkope ("September 2025 Idelkope Aff."), attached hereto as **Exhibit E**, ¶ 5.

15. Plaintiff sought to rejoin Life Time after learning that her insurance would cover the cost of membership. Ex. D at 37:23–38:12.

16. Plaintiff understood that the purpose of the December 2, 2021, meeting was to obtain a Life Time membership. *Id.* at 38:3–16.

17. During that meeting, the Life Time representative directed Plaintiff to provide her signature electronically, and Plaintiff signed as directed. *Id.* at 35:9–13.

18. Plaintiff understood that the requested signature related to the purpose of the meeting and her enrollment as a Life Time member. *Id.* at 38:17–39:6.

19. Plaintiff further understood that she was required to sign before she would receive a membership card and be permitted to use the Club. *Id.* at 39:2–9 ("Yes, only if I sign it that I will receive the card and could go there so I knew that by signing it I was going to join it.").

20. The membership documents generated from the December 2, 2021, transaction include a Member Usage Agreement bearing Plaintiff's electronic signature. A true and correct copy of the MUA is attached hereto as **Exhibit F**. *See* June 9, 2025, Affidavit of Brad Idelkope ("June 2025 Idelkope Aff."), attached hereto as **Exhibit G**, ¶ 2(A) (authenticating as a true and correct copy the same MUA now attached hereto as Ex. F).[1]

[1] The June 9, 2025, Idelkope Affidavit was originally submitted in support of Defendant's initial Motion for Summary Judgment and references the MUA as Exhibit B. The same MUA is attached to the present Statement of Undisputed Material Facts as Exhibit F.

21. At her deposition, Plaintiff confirmed that the signature appearing at the conclusion of the MUA is her signature. Ex. D at 36:10–15.

22. Plaintiff also confirmed that the signature appearing on the related General Terms Agreement is her signature. *Id.* at 35:23–36:9.

23. Notably, Plaintiff's native language is Korean, and she states that she speaks and reads limited English. ECF No. 31-2 ¶ 2.

24. Plaintiff testified that she did not pay close attention during the transaction because she had previously been a Life Time member for many years. Ex. D at 36:16–37:2.

25. Plaintiff also testified that, although she could not remember the details of her earlier enrollment at the Warrenville location, she was sure that she had signed something in that instance as well, because she had become a member. *Id.* at 37:9–16.

26. Following the December 2, 2021, transaction, Plaintiff received a membership card and used the Club frequently until the date of the alleged incident. *Id.* at 34:1–19; 39:10–40:14.

27. Plaintiff used the Club multiple times per week and regularly used its swimming pool, hot tub, sauna, and women's locker room. *Id.* at 34:1–20; 39:10–40:14.

## C. EXECUTION, DELIVERY, AND AVAILABILITY OF THE MUA

28. At 6:20 p.m. on December 2, 2021—approximately one minute after Plaintiff electronically signed the MUA—LTF sent a copy of the executed MUA, in a format capable of retention, to the email address Plaintiff provided to LTF. Ex. E, September 2025 Idelkope Aff. ¶ 6.

29. According to LTF's email records, Plaintiff opened the email containing the MUA on December 3, 2021. *Id.* at ¶ 7.

30. LTF's practice is also to make an executed MUA available to a member through its online member portal in a format capable of retention by the member. *Id.* at ¶ 8.

31. On December 7, 2021, LTF sent Plaintiff an email containing a link through which she could access Life Time's online member portal. *Id.* at ¶ 9.

32. According to LTF's records, Plaintiff opened that email and accessed the link to Life Time's online member portal on December 8, 2021. *Id.* at ¶ 10.

**D. RELEVANT TERMS OF THE MUA**

33. The first page of the MUA contains the following bolded, underlined, and capitalized warning:

> **PLEASE READ THIS AGREEMENT CAREFULLY AS IT AFFECTS YOUR LEGAL RIGHTS. THIS AGREEMENT CONTAINS AN ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND A BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER.**

Ex. F at 1.

34. Section 2 of the MUA, entitled "**ASSUMPTION OF RISK**," states that there are dangers, hazards, and risks of injury or damage associated with the use of Life Time's premises, facilities, equipment, services, activities, and products. *Id.* at § 2.

35. The risks identified in Section 2 include "slips, trips, collisions, falls, and loss of footing or balance," and defines resulting "Injuries" to include "torn or damaged muscles or ligaments, broken bones," "sprains, bruises and scrapes," and "pain and suffering." *Id.* at §§ 2(b)–(c).

36. Section 3 of the MUA, entitled "**WAIVER OF LIABILITY**," provides that the member releases and discharges Life Time from, agrees not to sue Life Time for, and waives claims arising from or caused by the negligence of Life Time. *Id.* at § 3.

37. The negligence claims addressed by the MUA include claims based upon the negligent maintenance or operation of Life Time's premises, the negligent failure to warn of or remove a hazardous or unsafe condition, and the negligent failure to provide or keep the premises in a reasonably safe condition. *Id.* at § 3(a).

38. The MUA further provides that, if the member asserts a negligence claim against Life Time or breaches the agreement not to sue Life Time, the member will pay the reasonable attorneys' fees, costs, and expenses Life Time incurs in defending the negligence claim and other claims based upon the same facts. *Id.* at § 3(b).

39. Immediately above Plaintiff's electronic signature, the MUA states:

> **I HAVE READ, UNDERSTOOD, RECEIVED A COPY OF, AND AGREE TO ALL TERMS AND CONDITIONS OF THIS MUA, INCLUDING SPECIFICALLY THE ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER UNDER WHICH I AM RELINQUISHING LEGAL RIGHTS.**

*Id.* at 5.

40. The MUA provides that "Personal Injury Claims" are not subject to its mandatory arbitration provision. *Id.* at § 6.

**E. PLAINTIFF'S CLAIM AND LTF'S COUNTERCLAIM**

41. Plaintiff alleges that LTF negligently permitted the blow-dryer cords beneath the vanity counter to hang into an area used by members entering and leaving the women's locker room, failed to secure the cords, created a dangerous condition by permitting the cords to hang into that area, and failed to take appropriate action to eliminate the alleged condition. Ex. A at ¶ 16.

42. Plaintiff alleges that, as a direct and proximate result of LTF's alleged negligence, she tripped over the blow-dryer electrical cords and sustained injuries. *Id.* at ¶¶ 11, 17.

43. On Day 2 of her deposition, Plaintiff testified that doctors diagnosed a fracture of her left patella following the fall. The transcript from Day 2 of Plaintiff's deposition is attached hereto as **Exhibit H**. Ex. H at 32:14–33:6.

44. By filing this action, Plaintiff asserted a negligence claim against LTF arising from the alleged incident. Ex. A at ¶¶ 16–18.

45. LTF has incurred attorneys' fees, costs, and expenses in defending Plaintiff's negligence claim.

## F. ELECTRONIC MEMBERSHIP ENROLLMENT PROCEDURES IN DECEMBER 2021

46. Doreen Holic is a Membership Concierge Leader for Life Time at the subject location, and has been employed by Life Time for approximately 20 years. She is familiar with the Club's electronic membership enrollment procedures in effect in December 2021. See Affidavit of Doreen Holic ("Holic Aff."), attached hereto as **Exhibit I**. Ex. I at ¶¶ 1–3, 12.

47. Under the Club's standard December 2021 procedures, individuals enrolling through Medicare or Medicaid-related membership programs were required to complete the enrollment process in person, with assistance from a Life Time employee. Ex. I, Holic Aff. ¶ 4.

48. The electronic enrollment process presented prospective members with membership documents, including the General Terms Agreement ("GTA") and Member Usage Agreement ("MUA"), typically on an iPad. Ex. I, Holic Aff. ¶¶ 5, 7.

49. Under Life Time's standard enrollment procedure, employees were expected to inform prospective members that they were being presented with membership agreements for review and signature and to explain the documents being signed, rather than merely present an iPad without explanation. Ex. I, Holic Aff. ¶ 6.

50. Members were required to scroll to the bottom of each agreement to reach its signature portion and physically sign on the electronic device. After signing one agreement, members would proceed to the next document for review and execution. Ex. I, Holic Aff. ¶¶ 7–9.

51. The December 2021 electronic enrollment process therefore provided prospective members with an opportunity to view and review the membership agreements before signing them. Ex. I, Holic Aff. ¶¶ 10, 12.

Respectfully submitted,
**Life Time, Inc. (f/k/a Life Time Fitness, Inc.)**

*/s/ Zachary G. Stillman*
Zachary G. Stillman

Michael L. Hahn
Zachary G. Stillman
**Litchfield Cavo LLP**
303 W. Madison Street, Suite 300
Chicago, IL 60606
312-781-6569 (Hahn)
312-781-6672 (Stillman)
Fax: 312-781-6630
Hahn@LitchfieldCavo.com
Stillman@LitchfieldCavo.com