# Exhibit F

*Jin Min v. Life Time Fitness, Inc.*
25-CV-01668
Exhibits to Defendant's Statement of Material Facts In Support of its Renewed Motion for Summary Judgment and Motion to Revise the Court's October 16, 2025 Interlocutory Order

LIFE TIME
HEALTHY WAY OF LIFE

# Member Usage Agreement

**Member Name:** Jin Min **Additional Members:**
**Member Number:** 111952844

**PLEASE READ THIS AGREEMENT CAREFULLY AS IT AFFECTS YOUR LEGAL RIGHTS. THIS AGREEMENT CONTAINS AN ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND A BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER.**

1. **MEMBERSHIP WITH LIFE TIME.** I wish to become a member of Life Time Fitness, which is operated by LTF Club Operations Company, Inc. in the United States and it's subsidiary - or LTF Club Operations Company Canada Inc. in Canada. These companies and Life Time, Inc., their direct and indirect subsidiaries and affiliates, and all of their employees, contractors, officers, directors, agents, representatives, sponsors, volunteers and any other entity or person acting for them, and all of their successors and assigns are collectively referred to and covered by this Member Usage Agreement ("MUA") as "Life Time." In consideration of the benefits of Life Time membership, including but not limited to the Use of Life Time Premises and Services by me, any of my minor children or wards who are Life Time members ("Minor Member(s)"), any other adults on my membership ("Other Member(s)"), or any of my guests ("Guests"), I hereby agree to all of the terms and conditions in this MUA with Life Time, including without limitation the **ASSUMPTION OF RISK, WAIVER OF LIABILITY, and ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER** below. Additionally, if I am a Partner Member or any other Additional Member of the Primary Member, I hereby agree on my own behalf to be jointly and severally liable for all the terms and obligations of the General Terms Agreement.

2. **ASSUMPTION OF RISK.** I understand that there are **dangers, hazards, and risks of injury or damage, some of which are inherent, in the use of Life Time's premises, facilities, equipment, services, activities or products**, whether available through membership dues or a separate fee.

    a. **Use of Premises and Services.** I understand that **use of Life Time's premises, facilities, equipment, services, activities or products** ("Use of Life Time Premises and Services") can include but is not limited to (1) use of indoor and outdoor pools, waterslides, sauna, steam rooms, locker rooms, restrooms, rock climbing structures, racquet courts, studios, fitness floors, fitness equipment, gymnasiums, child centers, kid's play areas, spa and salon, medi-spa, clinic or lab space, cafe, stairways, lobby, entryways, sidewalks, parking lots and any other facilities or equipment; (2) use of personal training services; group fitness classes (including yoga); child center services; kid's programs; spa and salon, medi-spa, or chiropractic services; and weight loss or nutritional programs; (3) use of services and participation in activities off Life Time premises, including but not limited to running, cycling, mountain biking, personal training, group fitness, athletic events, educational programs, wellness programs, travel programs, and field trips; and (4) all other programs, activities, classes, sessions, seminars, workshops, assessments, events, amenities, or benefits that are sponsored, endorsed or operated by Life Time on or off its premises.

    b. **Risks.** I understand that the **dangers, hazards, and risks** of injury or damage in the Use of Life Time Premises and Services ("Risks") may include but are not limited to **(1) slips, trips, collisions, falls, and loss of footing or balance, including "slip and falls" and falls from rock climbing structures or fitness equipment; (2) drowning; (3) equipment failure, malfunction, or misuse; (4) property or information theft, loss, misuse or damage, including from lockers, vehicles, equipment, files or systems;** and (5) other accidents or incidents that may result in injury or damage to me, Minor Member(s), Other Member(s), or Guest(s).

c. **Injuries.** I understand that such **injuries or damages** may include but are not limited to **major or minor personal, physical, bodily, emotional, mental, economic, property or other types of injuries or damages** ("Injuries") to me, Minor Member(s), Other Member(s) or Guest(s), including but not limited to (1) death; (2) paralysis, brain damage, heart attacks, strokes, disfigurement, heat stress and/or heat stroke, dehydration, concussions, hearing loss, torn or damaged muscles or ligaments, broken bones, allergic reactions, burns, sprains, bruises and scrapes; (3) aggravation of pre-existing injuries or medical conditions; (4) pain and suffering; (5) loss of consortium, love, affection, comfort, companionship, or care; (6) emotional distress, embarrassment, humiliation, or shock; (7) lost wages or lost earning capacity; (8) lost, stolen, misused or damaged property or information; and (9) any other disability, impairment, incapacity, injury or damage.

I understand that Risks and Injuries in the Use of Life Time Premises and Services (collectively, "Risks of Injury") **may be caused, in whole or in part, by the NEGLIGENCE OF LIFE TIME**, me, Minor Member(s), Other Member(s), Guest(s) and/or other persons. **I FULLY UNDERSTAND, AND VOLUNTARILY AND WILLINGLY ASSUME, THE RISKS OF INJURY.**

3. **WAIVER OF LIABILITY.** On behalf of myself and my spouse/partner, children/Minor Members, Other Members, Guests, parents, guardians, heirs, next of kin, personal representatives, heirs and assigns, I hereby voluntarily and forever **release and discharge Life Time from**, covenant and **agree not to sue Life Time for**, and **waive, any claims**, demands, actions, causes of action, debts, damages, losses, costs, fees, expenses or any other alleged liabilities or obligations of any kind or nature, whether known or unknown (collectively, "Claims") **for any Injuries** to me, Minor Member(s), Other Member(s), or Guest(s) in the Use of Life Time Premises and Services **which arise out of, result from, or are caused by any NEGLIGENCE OF LIFE TIME**, me, any Minor Member(s), any Other Member(s), any Guest(s), and/or any other person and, if in Canada, any **breach by Life Time of the Occupiers' Liability Act (Ontario) (collectively, "Negligence Claims").**

   a. **Negligence Claims.** I understand that Negligence Claims include but are not limited to Life Time's (1) negligent design, construction (including renovation or alteration), repair, maintenance, operation, supervision, monitoring, or provision of Life Time Premises and Services; (2) negligent failure to warn of or remove a hazardous, unsafe, dangerous or defective condition; (3) negligent failure to provide or keep premises in a reasonably safe condition; (4) negligent provision of or failure to provide emergency care; (5) negligent hiring, selection, training, instruction, certification, supervision or retention of employees, independent contractors or volunteers; (6) negligent collection, use, disclosure or storage of personal, sensitive or other information (including negligent failure to implement or maintain information security controls); or (7) other negligent act(s) or omission(s).

   b. **Life Time's Fees and Costs.** I specifically agree that, if I (on my own behalf or on behalf of another, including an estate) assert a Negligence Claim against Life Time and/or breach my agreement not to sue Life Time, **I will pay all reasonable fees (including attorneys' fees), costs and expenses incurred by Life Time ("Life Time's Fees and Costs") to defend (1) the Negligence Claim(s)** and (2) all other Claims based on the same facts as the Negligence Claim(s).

4. **DEFENSE AND INDEMNIFICATION.** On behalf of myself and my spouse/partner, children/Minor Member(s), Other Member(s), Guest(s), parents, guardians, heirs, next of kin, personal representatives, heirs and assigns, **I agree to defend, indemnify and hold Life Time harmless to the fullest extent permitted by law from and against any Claim (including any Negligence Claim) asserted against Life Time by any other person** (including but not limited to any Other Member, any Guest, any other Life Time member or guest, any family member who is not a Life Time member, or any other person or entity) arising out of, resulting from, caused by the Use of Life Time Premises and Services by me, Minor Member(s), Other Member(s), or Guest(s). My agreement to **defend Life Time** means that I will pay all of Life Time's Fees and Costs incurred to defend the Claim from the date the Claim is asserted. My agreement to **indemnify and hold Life Time harmless** means that I will pay any **settlement, judgment, or other damages, fees or costs of any type** incurred by Life Time to resolve the Claim.

5. **HEALTH AND SAFETY.** I will present my membership card in order to access Life Time centers. I represent that I am healthy enough to engage safely in the Use of Life Time Premises and Services, and that I have had the opportunity to talk to a doctor prior to Use of Life Time Premises and Services, which Life Time strongly recommends. I acknowledge that Life Time does not and will not provide medical advice. I agree to remove myself, Minor Member(s), Other Member(s) or Guest(s) from Use of Life Time Premises and Services if I observe any hazardous, unsafe, dangerous or defective condition, if or any of them is incapable of engaging in such Use safely, or if required or instructed to do so by Life Time. I consent to emergency care by Life Time for me, Minor Member(s), Other Member(s), or Guest(s). **I acknowledge that I am responsible for my own conduct, health and safety and that of Minor Member(s), Other Member(s), and Guests(s), and that Life Time is not responsible for any medical expenses incurred by me, Minor Member(s), Other Member(s), or Guest(s), in connection with the Use of Life Time Premises and Services.**

6. **PARENT OR GUARDIAN AGREEMENT.** If I am the **parent or legal guardian of a Minor Member**, I acknowledge and represent to Life Time that I have the right and authority to make decisions concerning the care, custody and control of each Minor Member, including but not limited to the right and authority to execute this MUA on the Minor Member's behalf. By signing this MUA, I am binding each of my Minor Member(s) to its terms, including but not limited to the **ASSUMPTION OF RISK, WAIVER OF LIABILITY, DEFENSE AND INDEMNIFICATION, ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER** and **HEALTH AND SAFETY** provisions.

7. **CLUB POLICIES; MEMBERSHIP TERMINATION OR SUSPENSION BY LIFE TIME.** I understand that Life Time retains complete control over all matters affecting or relating to its members and memberships, including but not limited to membership levels and types, access, prices, dues, fees, premises, facilities, equipment, services, products, programs, activities, classes, sessions, seminars, workshops, assessments, events, amenities or benefits, all of which are subject to change at any time without notice. I will comply, and ensure that Minor Member(s), Other Member(s) and Guest(s) comply, with Life Time's policies, procedures, rules, and regulations ("Club Policies"), whether set forth on paper, verbally, in club signage, or online at www.lifetime.life or other Life Time website. Life Time may change, modify or otherwise alter any Club Policies at any time without notice. I understand that Life Time may in its sole discretion terminate or suspend my membership or any aspect thereof, including but not limited to applicable guest privileges, for any reason, including but not limited to any conduct by me, Minor Member(s), Other Member(s) or Guest(s) that violates any Club Policies or that Life Time determines to be improper, inappropriate, or contrary to its best interests. For ***California residents***, please review https://my.lifetime.life/policy/ca-privacy-policy.html for information about our privacy practices, including the information we collect and your rights relating to your information.

8. **ELECTRONIC COMMUNICATIONS.** I expressly consent to receive electronic messages from Life Time at any email address I have provided to Life Time, including messages whose primary purpose is to advertise or promote products or services ("Marketing Messages") and messages whose primary purpose relateds to my transactions or relationship with Life Time, including membership, purchase of products or services, or amendments to this MUA ("Transactional Messages").

9. **IMAGE AND LIKENESS RELEASE.** I understand that Life Time may take photographs, audio or video recordings, or testimonial accounts that may contain the name, image, voice, likeness or account of me or my Minor Members (collectively "Images") during the Use of Life Time Premises and Services. I hereby irrevocably consent to and grant Life Time the exclusive, worldwide, perpetual, royalty-free and otherwise unlimited right to use, copy, modify, distribute, publicly display and perform, publish, transmit, remove, retain, repurpose, and commercialize any and all such Images (and the right to sublicense such images through unlimited levels of sublicensees) in any and all media or form of communication whether now existing or hereafter developed, without obtaining additional consent, without restriction or notification, and without compensating me in any way, and to authorize others to do the same. Without limiting the foregoing, I hereby consent to Life Time's use of the Images for commercial and promotional use, including on corporate or employee social media. Life Time may change, modify, rearrange, add, delete or otherwise alter such Images. I waive any right to inspect, approve, or edit such Images as used by Life Time.

10. **ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER**

a. **<u>Mandatory Binding Individual Arbitration</u>. Except as expressly provided below, Life Time and I (each a "party" or, together, "us," "we" or "parties") agree that any dispute, claim, case, or controversy (whether based in tort, contract, statute, regulation, ordinance, equity or any other legal theory) between us (whether arising out of or relating to past, present or future acts or omissions) ("Claims") shall be exclusively resolved by binding arbitration on an individual basis, rather than in court ("Arbitration Agreement").**

b. **<u>Waiver of Class Actions</u>. We each agree that we will assert Claims in arbitration only in our individual capacity, and not as a representative or member of any purported class. We each agree that we will not participate in any class, mass, collective, consolidated, private attorney general or other representative arbitration proceeding. Each party agrees that the arbitrator has no authority to arbitrate Claims on a class-wide basis and shall not consolidate, combine, or jointly arbitrate Claims of more than one person in a single arbitration.**

c. **<u>Waiver of Jury Trial</u>. We waive our constitutional and statutory rights to go to court and have a trial in front of a judge or a jury, electing instead to resolve by binding arbitration all Claims.**

d. **<u>Claims Not Subject to Arbitration</u>. There are only three exceptions to this Arbitration Agreement:**

   i. **<u>Small Claims</u>. Either party may bring individual Claims in small claims court.**

   ii. **<u>Personal Injury Claims</u>. Both parties must litigate personal injury Claims in court. For purposes of this exception, personal injury Claims are Claims arising from injury to the physical structure of the human body.**

   iii. **<u>Emergency Equitable Relief</u>. Either party may seek temporary injunctive relief or other equitable relief in court pending arbitration. A request for interim measures will not be deemed a waiver of any other rights or obligations under this Arbitration Agreement.**

e. **<u>Arbitration Procedures</u>. Either party may initiate an arbitration proceeding, which will be conducted by a single neutral arbitrator.**

   i. **<u>Arbitration Providers</u>. Each party has a choice of initiating arbitration before either the American Arbitration Association ("AAA") or JAMS, which are both established alternative dispute resolution providers ("ADR Providers"). If neither AAA nor JAMS is available to arbitrate, we will agree to select an alternative ADR Provider to administer the arbitration in this Arbitration Agreement.**

   ii. **<u>Arbitration Rules</u>. The arbitration will be conducted under the AAA Consumer Arbitration Rules (available at www.adr.org) or JAMS Streamlined Arbitration Rules and Procedures (available at www.jamsadr.com) ("Arbitration Rules"). The rules of the ADR Provider will govern all aspects of the arbitration, except to the extent such rules are in conflict with this Arbitration Agreement.**

   iii. **<u>Arbitration Location</u>. The arbitration hearing will be held at the ADR Provider's location that is closest to the claimant's primary residence, unless the claimant primarily resides outside the United States (in which case the arbitrator will give the parties reasonable notice of the date, time and place of any oral hearings.)**

   iv. **<u>Fees</u>. Payment of all filing, administrative, and arbitrator fees will be governed by the Arbitration Rules.**

v. **<u>Arbitrator's Authority and Award</u>. The arbitrator will decide the rights and liabilities, if any, of the parties, and the dispute will not be consolidated with any other matters or joined with any other cases or parties. The arbitrator will have the authority to grant motions dispositive of all or part of any Claim. The arbitrator will have the authority to award monetary damages, and to grant any non-monetary remedy or relief available to an individual under applicable law, the ADR Provider's Rules, and this Arbitration Agreement. The arbitrator will issue a written award and reasoned statement of decision describing the essential findings and conclusions on which the award is based, including the calculation of any damages awarded. The arbitrator has the same authority to award relief on an individual basis that a judge in a court of law would have. Any award will be subject to judicial confirmation or entry in any court having jurisdiction.**

f. **<u>Governing Law</u>. This Arbitration Agreement is governed by the Federal Arbitration Act and federal arbitration law.**

g. **<u>Confidentiality</u>. All aspects of the arbitration proceeding, including but not limited to the award of the arbitrator and compliance therewith, will be strictly confidential. The parties agree to maintain confidentiality unless otherwise required by law. This paragraph will not prevent a party from submitting to a court of law any information necessary to enforce this Arbitration Agreement or to enforce an arbitration award.**

11. **<u>SEVERABILITY</u>.** I agree that this MUA, including without limitation the **ASSUMPTION OF RISK, WAIVER OF LIABILITY**, and **ARBITRATION AGREEMENT WITH CLASS ACTION WAIVER**, is intended to be as broad and inclusive as permitted under applicable law. If a court declares any part of this MUA unenforceable, invalid or void, that part alone shall be severed from this MUA, and the entire remainder of the MUA, including any partially enforceable provision, shall be fully binding and enforceable to the maximum extent permitted by applicable law.

12. **<u>OTHER PROVISIONS</u>.** I am not relying on any oral or written promises, representations, statements, covenants or warranties, other than those set forth herein, to induce me to sign this MUA. This MUA may be amended at any time by Life Time upon such notice, if any, as may be required by law. If Life Time fails to enforce any right in this MUA for any reason, Life Time does not waive its right to enforce it later.

**I HAVE READ, UNDERSTOOD, RECEIVED A COPY OF, AND AGREE TO ALL TERMS AND CONDITIONS OF THIS MUA, INCLUDING SPECIFICALLY THE ASSUMPTION OF RISK, WAIVER OF LIABILITY, AND BINDING ARBITRATION AGREEMENT WITH A CLASS ACTION WAIVER UNDER WHICH I AM RELINQUISHING LEGAL RIGHTS.**

**Signed by Member: Jin Min**



Thu Dec 02 2021 18:19:45 GMT-0600 (Central Standard Time)