**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JIN MIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:25-CV-01668 |
| | ) | |
| LIFE TIME FITNESS, INC., a Minnesota Corporation, | ) | Judge Robert Gettleman |
| | ) | |
| | ) | Magistrate Judge Daniel McLaughlin |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR SUMMARY JUDGMENT AND TO REVISE THE COURT'S OCTOBER 16, 2025 ORDER**

Defendant, Life Time, Inc. (f/k/a Life Time Fitness, Inc.) ("LTF" or "Defendant"), by and through its attorneys, Litchfield Cavo LLP, and pursuant to Federal Rules of Civil Procedure 54(b) and 56, submits this Memorandum in Support of its Renewed Motion for Summary Judgment and to Revise the Court's October 16, 2025, Interlocutory Order. LTF respectfully requests that the Court revise its prior interlocutory order, enter summary judgment in LTF's favor and against Plaintiff on Plaintiff's Complaint, and enter summary judgment in LTF's favor as to liability on its Counterclaim. In support thereof, LTF States as follows:

## INTRODUCTION

Plaintiff seeks damages for injuries allegedly sustained when she tripped over blow-dryer cords beneath a vanity in the women's locker room at the Romeoville Club. SOF ¶¶ 1–3, 41–44. Before that incident, however, Plaintiff electronically signed LTF's Member Usage Agreement (the "MUA"), which expressly covers trips, falls, broken bones, negligent premises maintenance, hazardous conditions, failures to warn, and failures to maintain reasonably safe premises. SOF ¶¶ 14–21, 34–37.

The Court denied LTF's initial motion for summary judgment because the record then before it did not establish contract formation as a matter of law. Specifically, the record did not show what appeared on the electronic pad or otherwise provide transaction-specific evidence that Plaintiff objectively manifested assent to the MUA. ECF No. 38 at 4–6; SOF ¶¶ 7–10. Because the Court found a factual dispute concerning formation, it did not reach the MUA's enforceability, its application to Plaintiff's claim, or LTF's Counterclaim. *Id.*

The completed discovery record resolves that issue. Plaintiff testified that she went to the Club to obtain a membership, understood that the requested electronic signature related to joining, knew she had to sign before receiving a membership card and access to the Club, and confirmed that the signature on the MUA is hers. SOF ¶¶ 12–21. She then accepted and repeatedly used the membership obtained through that transaction. SOF ¶¶ 26–27. Although Plaintiff did not review the MUA's terms, Illinois law determines assent from objective conduct, and her testimony establishes that she knowingly supplied her signature as the contractual act required to enter the membership relationship. The MUA therefore bars Plaintiff's negligence claim and entitles LTF to summary judgment as to liability on its Counterclaim for the reasonable attorneys' fees, costs, and expenses incurred in defending that claim. SOF ¶¶ 38, 44–45.

Additionally, the completed record now includes evidence concerning Life Time's electronic membership enrollment procedures in December 2021, establishing that prospective members were presented with the membership agreements electronically, were required to scroll to the signature portion of each agreement, and physically signed the documents. SOF ¶¶ 46–51.

## <u>LEGAL STANDARD</u>

### A. Revision of the Prior Interlocutory Order and Renewed Summary Judgment

An order denying summary judgment is interlocutory and has no res judicata effect.

*Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995). Rule 54(b) permits a district court to revise any interlocutory order before entry of final judgment and thereby grants the court broad authority to reconsider its prior rulings. Fed. R. Civ. P. 54(b); *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012).

A district court may therefore, in its discretion, entertain a renewed or successive motion for summary judgment when good reason exists. *Whitford*, 63 F.3d at 530. Such a motion is particularly appropriate where there has been: "(1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; [or] (3) need to correct a clear error or prevent manifest injustice." *Id.* The Seventh Circuit has specifically approved renewed summary judgment based on an expanded record developed through discovery after the original motion was denied. *Kirby v. P.R. Mallory & Co.*, 489 F.2d 904, 913 (7th Cir. 1973).

**B. Summary Judgment Under Rule 56**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of identifying the record evidence demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). Once that burden is met, the nonmovant must identify specific evidence from which a reasonable factfinder could return a verdict in its favor and may not rely upon conclusory allegations or speculation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 256 (1986).

In deciding the motion, the Court construes the evidence and draws all reasonable inferences in favor of the nonmoving party, but only disputes concerning facts that could affect the outcome under the governing substantive law preclude summary judgment. *Id.* at 248. Because this Court exercises diversity jurisdiction, federal procedural law governs the motion, while Illinois

substantive law governs the parties' claims and defenses. *First Nat'l Bank & Tr. Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 689 (7th Cir. 2004).

## ARGUMENT

### I. The Court Should Revise Its Interlocutory Order Because the Completed Record Materially Changes the Contract-Formation Analysis.

The Court's prior ruling rested on the record then available, which did not establish what appeared on the electronic pad or otherwise provide transaction-specific evidence demonstrating Plaintiff's objective understanding when she supplied her signature. The Court therefore found a factual dispute concerning whether the parties' outward words and conduct manifested assent to the MUA. ECF No. 38 at 4–6; SOF ¶¶ 8–10.

Plaintiff's subsequent testimony materially changes that record. She understood that she was meeting with LTF to obtain a membership, that the requested signature related to joining, and that signing was required before she would receive a membership card and access to the Club. SOF ¶¶ 12–19. She then supplied the signature appearing on the MUA and accepted and repeatedly used the resulting membership. SOF ¶¶ 20–22, 24–27. This is not a request to reconsider the same evidence. It is a renewed motion based on testimony directly addressing the contractual significance attributable to her signature. Revision of the interlocutory order and consideration of the renewed motion are therefore appropriate under Rules 54(b) and 56. *See Whitford*, 63 F.3d at 530; *Kirby*, 489 F.2d at 913. The record is further supplemented by testimony concerning the electronic enrollment procedures in place at the Club in December 2021, including the presentation of the MUA for review and the requirement that members scroll to the signature portion before electronically signing. SOF ¶¶ 46–51.

### II. The Undisputed Evidence Establishes That Plaintiff Objectively Assented to the MUA.

#### *A. Illinois law determines assent from objective manifestations, not unexpressed subjective understanding.*

Under Illinois law, contractual assent is determined from the parties' objective words and conduct, not their unexpressed intentions or subjective understanding. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 150 (2006). A person who signs an agreement is presumed to know its contents and is charged with knowledge of and assent to its terms. *Id.* at 150–51.

Absent fraud, duress, or conduct preventing review, a signatory therefore cannot avoid an agreement because she failed to read or understand it. *Harris v. Walker*, 119 Ill. 2d 542, 548–49 (1988); *Mizyed v. Palos Community Hospital*, 2016 IL App (1st) 142790, ¶ 55. That rule applies even when the signer cannot read English without assistance. *Mizyed*, 2016 IL App (1st) 142790, ¶ 55.

Electronic signatures are treated the same way. Illinois distinguishes an electronically signed agreement from an online transaction in which clicking a button may not adequately communicate assent to separately presented terms. *Zuniga v. Major League Baseball*, 2021 IL App (1st) 200709, ¶¶ 28–29. Courts accordingly apply the duty-to-read rule to electronically accepted agreements, including agreements signed on an in-person signature pad. *Ambrosius v. Chicago Athletic Clubs, LLC*, 2021 IL App (1st) 200893, ¶¶ 27–33; *Rice v. Farmers New World Life Insurance Co.*, No. 16-cv-01446-JES-JEH, 2018 WL 2144344, at *4–5 (C.D. Ill. May 9, 2018).

### ***B. Plaintiff knowingly signed to complete the membership transaction and obtain access to the Club.***

The undisputed record satisfies Illinois's objective-assent standard. Plaintiff voluntarily went to the Romeoville Club to obtain a Life Time membership after learning that her insurance would cover it. SOF ¶¶ 12–16. She understood that the meeting concerned joining Life Time and that the electronic signature requested by the Life Time representative related to that membership transaction. SOF ¶¶ 16–18.

Plaintiff further understood that signing was required to complete the transaction. She testified that "only if I sign it that I will receive the card and could go there so I knew that by signing it I was going to join it." SOF ¶ 19. She then provided her electronic signature and admits that the signature appearing on the MUA is hers. SOF ¶¶ 20–21. Afterward, she received the membership and Club access she sought and used the facility multiple times per week. SOF ¶¶ 26–27. Moreover, Life Time's standard enrollment procedures required that prospective members be presented with the GTA and MUA electronically, with the opportunity to review each agreement before physically signing. Members were required to scroll to the bottom of each agreement to reach the signature portion. SOF ¶¶ 48–51.

Plaintiff's deposition clarifies the transaction and establishes facts that were unavailable when the original motion was briefed. She did not testify that she believed the signature served some purpose unrelated to joining Life Time or that she signed without understanding that she was completing the membership transaction. Instead, she explained that she did not pay close attention because she had previously been a Life Time member for many years and had undergone this same process previously. SOF ¶¶ 24–25.

Plaintiff's testimony does not create a dispute concerning the contractual significance of her signature; it merely explains why she did not review the agreement before signing it. Her failure to focus on or review those terms cannot overcome her objective conduct: she knowingly signed as the contractual act necessary to obtain the membership and access she sought. Accordingly, no genuine dispute remains as to whether Plaintiff objectively assented to the MUA.

### ***C. The Online-Contract Decisions Relied Upon in the Order Denying Defendant's Motion for Summary Judgment Addressed Materially Different Assent Mechanisms.***

In its prior order, the Court relied on *Sgouros* and *Domer*, which address whether an online interface provided reasonably conspicuous notice of contractual terms and whether clicking a

transactional button unambiguously manifested assent to them. *See* ECF No. 38 at 4–5. Those decisions concern acts that may possess no apparent contractual significance apart from the design and accompanying language of the interface. They do not apply in the same manner when a person knowingly supplies an actual signature as the act required to enter a contractual relationship.

In *Sgouros*, the consumer clicked a button to continue an online credit-score transaction, but the language immediately above the button represented that the click authorized access to his credit information rather than acceptance of a separate service agreement. The Seventh Circuit therefore concluded that the interface directed the consumer toward a noncontractual understanding of the click. *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1032–36 (7th Cir. 2016). In doing so, the court expressly distinguished signing a contract, observing that an Internet user may not realize she is entering an agreement, whereas "a reasonable person signing a physical contract will rarely be unaware of that fact." *Id.* at 1035.

*Domer* likewise involved an online checkout process in which the alleged assent consisted of submitting an order rather than signing an agreement. The Seventh Circuit therefore examined the content, clarity, and placement of the notice informing the consumer that submitting the order constituted acceptance of linked terms. *Domer v. Menard, Inc.*, 116 F.4th 686, 693–700 (7th Cir. 2024). Both decisions thus asked whether a consumer would understand that clicking a button to complete an independent transaction also signified assent to contractual terms presented elsewhere.

By contrast, courts applying Illinois law use ordinary objective-assent and duty-to-read principles when a party electronically signs an agreement. *See Mulligan v. Loft Rehabilitation & Nursing of Canton, LLC*, 2023 IL App (4th) 230187, ¶¶ 45–49; *Matricciani v. American Homeowner Preservation, Inc.*, 718 F. Supp. 3d 825, 833–35 (N.D. Ill. 2024); *Dirth v. Oak Street*

*Health, Inc.*, No. 24 C 5290, 2025 WL 524142, at *3–5 (N.D. Ill. Feb. 18, 2025); *Rice*, 2018 WL 2144344 at *4–5. These decisions reflect that the nature and understood significance of the assenting act—not the use of electronic technology—govern the formation analysis.

The completed record places this case on the signed-contract side of that distinction. Plaintiff did not merely press a checkout, payment, or renewal button without understanding its contractual significance. She went to the Club to obtain a membership, was asked to provide her electronic signature, understood that the signature related to joining, and knew she would not receive a membership card or access to the Club unless she signed. SOF ¶¶ 15–19. She then signed and confirmed that the signature appearing on the MUA is hers. SOF ¶¶ 20–21.

The supplemented record now establishes Life Time's standard electronic enrollment procedures in December 2021, including that prospective members were presented with the membership agreements, required to scroll to the signature portion, and provided the opportunity to review the terms before physically signing. SOF ¶¶ 46–51. Although the evidence does not establish that Plaintiff actually read the MUA, Illinois law does not require proof that she reviewed or subjectively understood its terms. Plaintiff's own testimony establishes that she knowingly supplied her signature as the act required to enter the membership relationship. Illinois law does not additionally require proof that she read or subjectively understood every provision of the electronically signed agreement. *See Zuniga v. Major League Baseball*, 2021 IL App (1st) 200709, ¶¶ 28–29; *Rice*, 2018 WL 2144344, at *4–5.

## III. Plaintiff's Remaining Challenges Do Not Render the MUA Unenforceable.

### *A. The MUA is not void under the Physical Fitness Services Act.*

The Physical Fitness Services Act ("PFSA") requires a physical-fitness-services contract to be in writing and directs that a copy "shall be given to the customer at the time the customer

signs the contract." 815 ILCS 645/4. A noncompliant contract is void and unenforceable. 815 ILCS 645/9(c). The MUA satisfies those requirements.

The MUA was executed electronically on December 2, 2021. SOF ¶¶ 20–21, 28–29. Under the Illinois Uniform Electronic Transactions Act ("UETA"), an electronic record satisfies a statutory writing requirement, and a requirement that written information be provided or delivered may be satisfied by an electronic record capable of retention. 815 ILCS 333/7(c), 8(a). Plaintiff agreed to transact electronically by knowingly providing her electronic signature to complete the membership transaction. 815 ILCS 333/5(b); SOF ¶¶ 17–21.

Approximately one minute after Plaintiff signed, LTF transmitted a retainable copy of the executed MUA to the email address she provided. SOF ¶¶ 28–30. Plaintiff opened that email the following day, and the agreement was also available through her member portal. SOF ¶¶ 29–32. Under the UETA, an electronic record is received when it enters the information-processing system designated or used by the recipient, regardless of whether the recipient is then aware of it. 815 ILCS 333/15(b), (e); *Balzer v. Northeast Illinois Regional Commuter Railroad Corp.*, 2026 IL App (1st) 232227, ¶¶ 56–59.

Read together, the PFSA and UETA permit the contemporaneous electronic delivery used here. The PFSA does not require a paper copy or prescribe a particular delivery method, while the UETA expressly recognizes delivery through a retainable electronic record. LTF's automated transmission of the executed MUA approximately one minute after signature, as part of the same electronic transaction, therefore satisfied Section 4. *See Barrientos v. Fitness Member Services, LLC*, 749 F. Supp. 3d 944 (N.D. Ill. 2024) (holding that emailing a completed fitness-membership contract after electronic enrollment satisfied a requirement that an electronic-funds-transfer authorization be provided "when made").

At minimum, LTF substantially complied with Section 4. Substantial compliance is sufficient where the statute's purpose was fulfilled and no prejudice resulted. *Behl v. Gingerich*, 396 Ill. App. 3d 1078, 1086–87 (4th Dist. 2009); *Kennedy v. City of Chicago*, 2022 IL App (1st) 210492, ¶¶ 39–40. LTF transmitted a complete, retainable copy approximately one minute after execution; Plaintiff opened it the next day, retained access to the agreement, and continued using her membership. SOF ¶¶ 26–33. Nothing indicates that the brief transmission interval impaired her ability to review the MUA or exercise any statutory cancellation right. The MUA therefore is not void under Section 9(c).

***B. The MUA is neither procedurally nor substantively unconscionable.***

Procedural unconscionability concerns impropriety in contract formation that deprives a party of meaningful choice, while substantive unconscionability concerns terms so one-sided as to oppress or unfairly surprise. *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 23–24, 28 (2006). Neither is present here.

Plaintiff identifies no pressure, coercion, deception, or conduct that prevented her from reviewing the MUA. Instead, she attributed her lack of attention to her prior years of Life Time membership. SOF ¶¶ 22–26. The MUA also conspicuously identified its assumption-of-risk and liability-waiver provisions through prominent warnings, separate headings, and the acknowledgment immediately above Plaintiff's signature. SOF ¶¶ 33–39. LTF was not required to explain the agreement or its legal consequences orally, and Plaintiff's limited English proficiency or failure to read the agreement does not establish unconscionability. *See Harris*, 119 Ill. 2d at 548–49; *Mizyed*, 2016 IL App (1st) 142790 at ¶ 55; *Mulligan*, 2023 IL App (4th) 230187 at ¶¶ 45–49.

Nor is the MUA substantively unconscionable. Illinois permits exculpatory agreements in ordinary recreational and fitness relationships, including health-club membership agreements, and the waiver here is limited to injuries arising from use of Life Time's premises and services. *See Owen v. Vic Tanny's Enterprises*, 48 Ill. App. 2d 344, 348–50 (1st Dist. 1964); *Kubisen v. Chicago Health Clubs*, 69 Ill. App. 3d 463, 465–66 (1st Dist. 1979); SOF ¶¶ 34–38. The fee provision is similarly limited: it applies only when a member asserts a contractually waived negligence claim or breaches the covenant not to sue and permits recovery only of reasonable fees, costs, and expenses incurred in defending that claim. SOF ¶ 38. Illinois law permits parties to allocate litigation expenses by contract, and neither the MUA's standardized form nor the absence of negotiation independently establishes unconscionability. *See Johnson v. Human Rights Commission*, 173 Ill. App. 3d 564, 569 (1st Dist. 1988); *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 191 (1983).

**IV. The MUA Expressly Bars Plaintiff's Negligence Claim.**

LTF's MUA defines the "Risks" associated with using Life Time's premises and services to include "slips, trips, collisions, falls, and loss of footing or balance," and defines resulting "Injuries" to include "torn or damaged muscles or ligaments, broken bones," "sprains, bruises and scrapes," and "pain and suffering." SOF ¶ 35; Ex. F §§ 2(b)–(c). It further provides:

> **WAIVER OF LIABILITY.** … I hereby voluntarily and forever **release and discharge Life Time from**, covenant and **agree not to sue Life Time for**, and **waive, any claims… which arise out of, result from, or are caused by any NEGLIGENCE OF LIFE TIME**….

SOF ¶ 36; Ex. F § 3 (emphasis in original).

The expressly waived claims include those arising from negligent maintenance of Life Time's premises, the negligent failure to warn of or remove a hazardous condition, and the negligent failure to keep the premises reasonably safe. SOF ¶ 37; Ex. F § 3(a).

***A. The waiver is valid and consistent with Illinois public policy.***

Illinois favors the freedom to contract, including through exculpatory agreements. *Harris*, 119 Ill. 2d at 548. Such agreements are enforceable unless they violate settled public policy or arise from a special relationship or substantial disparity in bargaining power that precludes enforcement. *Id.*; *Owen*, 48 Ill. App. 2d at 351–53.

Illinois courts have repeatedly upheld exculpatory clauses in ordinary health-club membership agreements because fitness services are neither essential nor public necessities and no special relationship exists between a club and its members. *Neumann v. Gloria Marshall Figure Salon*, 149 Ill. App. 3d 824, 827–29 (2d Dist. 1986); *Kubisen*, 69 Ill. App. 3d at 466–67. Courts have likewise enforced Life Time's specific exculpatory provisions under Illinois law. *Titschler v. LTF Club Operations Co.*, No. 15 C 664, 2016 WL 1613545, at *4 (N.D. Ill. Apr. 22, 2016). Plaintiff's ordinary fitness-club membership presents no basis to depart from that settled authority.

***B. Plaintiff's alleged accident falls squarely within the express language of the MUA.***

Plaintiff alleges that LTF permitted blow-dryer cords to hang beneath the locker-room vanity, failed to secure them, created a dangerous condition, and failed to eliminate it. SOF ¶ 41. Those allegations fall directly within the MUA's express coverage of trips and falls resulting in broken bones, negligent maintenance or operation of the premises, failure to warn of or remove a hazardous condition, and failure to keep the premises reasonably safe. SOF ¶¶ 35, 37. Plaintiff's resulting patellar fracture is an expressly identified "Injury." SOF ¶ 43.

Plaintiff previously relied on *Hawkins v. Capital Fitness, Inc.*, 2015 IL App (1st) 133716, ¶¶ 25–30, and *Stone v. Life Time Fitness, Inc.*, 411 P.3d 225, 230–33 (Colo. App. 2017), but neither controls. *Hawkins* involved a falling mirror and materially narrower waiver language. Although *Stone* involved a similar locker-room trip over a hair-dryer cord, it applied Colorado law to an

earlier, materially different version of Life Time's MUA. *See Stone*, 411 P.3d 225, app. at 1–2 (reproducing the MUA at issue). That agreement relied on generalized "inherent risk" language and did not expressly identify trips and falls or the premises-liability theories alleged here. By contrast, the MUA here expressly covers trips, falls, negligent premises maintenance, hazardous conditions, failures to warn, and failures to keep the premises reasonably safe. SOF ¶¶ 35, 37.

## V. Plaintiff's Breach of the MUA Entitles LTF to Summary Judgment as to Liability on Its Counterclaim.

A breach-of-contract claim requires a valid and enforceable contract, performance by the party seeking enforcement, breach, and resulting damages. *Ivey v. TransUnion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. Each element is established here. As explained above, Plaintiff objectively assented to a valid and enforceable MUA, and LTF performed by providing the membership and Club access she sought. SOF ¶¶ 19, 26–27, 34–39.

Plaintiff breached the MUA by filing this action. She agreed not to assert negligence claims arising from slips, trips, falls, negligent premises maintenance, hazardous conditions, failures to warn, or failures to maintain reasonably safe premises. SOF ¶¶ 34–38. Her Complaint asserts those precise theories based on her alleged trip over blow-dryer cords beneath a locker-room vanity. SOF ¶¶ 41–44. Filing that covered claim therefore breached her covenant not to sue and caused LTF to incur attorneys' fees, costs, and expenses in defending the action. SOF ¶¶ 38, 45; *see Johnson v. Human Rights Commission*, 173 Ill. App. 3d 564, 569 (1st Dist. 1988).

The MUA's exclusion of personal-injury claims from arbitration does not authorize claims separately barred by the waiver and covenant not to sue. Contracts must be construed as a whole so that each provision is given effect. *Insurance Benefit Group, Inc. v. Guarantee Trust Life Insurance Co.*, 2017 IL App (1st) 162808, ¶ 38. The arbitration exclusion determines the forum for personal-injury claims that remain legally available; it does not nullify Section 3's substantive

waiver. Thus, a nonwaived personal-injury claim may proceed in court, but a claim expressly waived under Section 3 remains barred regardless of forum.

The undisputed evidence establishes LTF's performance, Plaintiff's breach, and resulting damages. The Court should therefore enter summary judgment for LTF as to liability on its Counterclaim and determine the amount of reasonable fees, costs, and expenses through subsequent proceedings. The fact that the amount remains to be calculated does not preclude judgment as to liability. *See FirstMerit Bank, N.A. v. Trinity Management Associates, L.P.*, 960 F. Supp. 2d 789, 814–15 (N.D. Ill. 2013); *Springfield Oil Services, Inc. v. Mermelstein*, 914 F. Supp. 258, 261–62 (N.D. Ill. 1996).

## CONCLUSION

The completed discovery record establishes that Plaintiff objectively assented to the MUA, which expressly bars the negligence claim asserted in her Complaint and supports liability on LTF's Counterclaim.

WHEREFORE, Defendant Life Time, Inc. (f/k/a Life Time Fitness, Inc.) respectfully requests that the Court: (1) revise its October 16, 2025 interlocutory order; (2) enter summary judgment in LTF's favor on Plaintiff's Complaint; (3) enter summary judgment in LTF's favor as to liability on its Counterclaim; and (4) determine the amount recoverable on the Counterclaim through subsequent proceedings.

Respectfully submitted,
**Life Time, Inc.**

*/s/ Zachary G. Stillman*
Zachary G. Stillman

Michael L. Hahn
Zachary G. Stillman
**Litchfield Cavo LLP**
303 W. Madison Street, Suite 300
Chicago, IL 60606

312-781-6569 (Hahn)
312-781-6672 (Stillman)
Hahn@LitchfieldCavo.com
Stillman@LitchfieldCavo.com